UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 21 2007

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

M.S. WHOLESALE PLUMBING, )
INC., individually, and on behalf of )
a class of all others similarly )
situated, )
      Plaintiff, )
)
v. )
)
)
)
UNIVERSITY SPORTS )
PUBLICATIONS CO., INC., )
      Defendant. )
)
)

Case No. **4 07 C V 0 0 0 0 0 7 3 0  SWW**

**COMPLAINT – CLASS ACTION**
**DEMAND FOR JURY TRIAL**

This case assigned to District Judge _____
and to Magistrate Judge _____

**PLAINTFF M.S. WHOLESALE PLUMBING, INC.'S**
**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Comes now, Plaintiff, M.S. Wholesale Plumbing, Inc. ("MS Wholesale"), an Arkansas

Corporation, individually and on behalf of a class of all others similarly situated, and, by

counsel, tenders the following Class Action Complaint and Demand for Jury Trial:

**I.**
**JURISDICTION**

1.     The United States District Court for the Eastern District of Arkansas has diversity

jurisdiction over this Class Action lawsuit under 28 U.S.C.A. §1332(d).

2.     Upon information and belief, University Sports Publications Co., Inc. ("USP") is

a corporate resident of New York; and, MS Wholesale is a corporate resident of the State of

Arkansas.  Pursuant to Federal law, there must only be minimal diversity between the Plaintiff

Class and the Defendant, meaning that only a single member of the Plaintiff Class need be

diverse from a single Defendant.  28 U.S.C. §1332(d)(2)(A).

3.      Upon information and belief, the matter in controversy exceeds the value of $5,000,000.00, exclusive of interest and costs. *Id.* at §1332(d)(6).

## II.
## VENUE

4.      Venue in this judicial district is proper under 28 U.S.C. §1391(a)(2) because a substantial part of the events or omissions giving rise to the claims herein described occurred within this judicial district.

## III.
## INTRODUCTION

5.      This is a lawsuit charging USP with the illegal marketing and selling of "advertising" space to MS Wholesale and the absent members of the class MS Wholesale represents (hereinafter referred to as "Class Members").

6.      USP purchases advertising space in various schools' sports publications (*e.g.,* athletic programs, yearbooks), often at a modest price. USP then resells the advertising space at an inflated rate. At times, USP inflates the rate *over two thousand percent* **(2000%)**.

7.      In order to most effectively target its sales presentations, USP identifies businesses within a particular school's community. After targeting a particular business, USP would initiate contact with that business and purport to sell advertising space *on behalf* of a particular school.

8.      Even when a particular business would decline to purchase an advertising package, USP would often send an invoice, thanking the business for its "worthwhile service" of "supporting" a particular school. These invoices were often printed on letterhead bearing the particular school's name, and would include the word "official."

2

9.    During its sales presentations, USP does not explain, or even intimate, that it is a private company and is, in fact not affiliated with the particular school.

10.    Instead, USP exploits the "home-town pride" of local businesses in order to fraudulently increase its own profit margin.   Moreover, USP specifically targets individuals or entities that depend upon local schools as a significant source of income.   USP knows that these targeted individuals or entities will be reluctant to decline USP's advances if they are led to believe that USP is affiliated with the local school and/or is requesting financial support on behalf of the local school.

11.    MS Wholesale brings this action individually and on behalf of all others similarly situated to, *inter alia,* recover damages and require USP to (i) cease misrepresenting the nature of its business; ( ii) make full disclosure to all prospective clients that USP is a private company that is *not* affiliated with the particular school in whose publication USP is purporting to sell advertisements; and, (iii)  make full disclosure to all prospective clients that  the monies paid to USP will be retained by USP and will not go to "support" the particular school.

## IV.
## THE PARTIES

A.    **Plaintiff M.S. Wholesale Plumbing, Inc.**

12.    MS Wholesale is a plumbing supply company with its principal and sole place of business in Russellville, Arkansas.   MS Wholesale was founded in 1984 by William Marion Srygley, Jr. and Henry Clay ("H.C.") Martin.

13.    Since 1984, MS Wholesale has been a provider of quality plumbing supplies to contractors, businesses, and educational institutions throughout central and northwest Arkansas. One of MS Wholesale's more significant accounts is Arkansas Tech University – a respected

3

State University founded in 1909 and located in Russellville, Arkansas. MS Wholesale provides plumbing supplies to Arkansas Tech's maintenance personnel on an almost daily basis.

14.    For more than 20 years, MS Wholesale has been an enthusiastic and devoted supporter of the Arkansas Tech athletic program. Founder and current President of MS Wholesale, William Marion Srygley, Jr., attended Arkansas Tech and is a proud supporter of the University.

**B.    Defendant University Sports Publications Co., Inc.**

15.    Upon information and belief, USP is incorporated under the laws of New York and/or has its principal place of business in the State of New York. USP does business throughout the United States, including the State of Arkansas.

16.    USP markets itself as the "leading publisher of collegiate sports souvenir magazines and yearbooks." USP claims that its "publications reach more than 500 colleges and universities across all of North America."

17.    Alongside its publishing business, USP "offers a wide range of services including concept development, advertising sales, design and production." USP claims that its "staff possesses the necessary expertise and technical background to assist [its] clients in developing quality cost effective advertisements."

18.    USP claims that it "strives to develop and produce high-quality sports publications that meet the high standards of our clients." Further, USP purports to take great pride "in nurturing relationships between a team and its fans" and, again, in "assist[ing] clients in developing quality cost effective advertisements."

## V.
## FACTUAL ALLEGATIONS

19.     MS Wholesale was first approached by USP in 2004.

20.     Prior to the 2004-2005 Arkansas Tech Football season, MS Wholesale received an unsolicited invoice for $495.00 on letterhead which read "Arkansas Tech University Official Football Program." This invoice purported to represent the sale of a "Sixteenth Page" size advertisement in Arkansas Tech's football publication. The invoice thanked MS Wholesale for its "participation in the 2004 Arkansas Tech University Football Program." In a smaller typeface, the invoice contained language stating "*Prepared By:* University Sports Publications" and listed a Little Rock, Arkansas address located at 1818 North Taylor St., Dept. 196. A true and correct copy of the 2004 invoice is attached hereto as **Exhibit A**.

21.     MS Wholesale returned the unsolicited invoice unpaid.

22.     Shortly thereafter, USP contacted MS Wholesale by telephone. USP agents held themselves out as calling "on behalf" of Arkansas Tech and as "soliciting support" for the University. USP asked MS Wholesale to provide "support" to the University by agreeing to purchase an advertisement in the "Official Arkansas Tech Football Program." Again, MS Wholesale did not agree to purchase an advertisement.

23.     Nonetheless, and despite MS Wholesale's refusals, when the 2004-2005 Arkansas Tech Football Program was published, USP included an advertisement in that publication for MS Wholesale.

24.     Out of a desire not to jeopardize its business relationship with Arkansas Tech, one of its major clients, MS Wholesale Plumbing paid the invoice, believing that USP had actually

5

been calling MS Wholesale on behalf of Arkansas Tech and that MS Wholesale's payment of the invoice would therefore be used to support the Arkansas Tech football and athletic programs.

25.     Upon information and belief, MS Wholesale's payment was not turned over to Arkansas Tech or otherwise used for the benefit of Arkansas Tech, but was fraudulently retained by USP.

26.     Notwithstanding the forgoing, USP was not, and is not, registered with the Arkansas Secretary of State to conduct business within the State of Arkansas. Nor is there a USP office or a "Department 196" located at 1818 North Taylor St. in Little Rock. Mail sent to this address goes to a *mailbox* rented by USP (mailbox No. 196) inside a United Parcel Service ("UPS") store at that address.

27.     More recently, USP again began contacting MS Wholesale Plumbing in August of 2007 in an attempt to sell advertisement space in the Arkansas Tech Football program. USP represented to MS Wholesale that a 1/16 page advertisement in that publication costs $595.00 and that a 1/8 page advertisement in the same publication costs $990.00.

28.     When questioned about USP's relationship with Arkansas Tech, USP stated that it was "the company that puts the football program together for Arkansas Tech University." MS Wholesale asked USP to fax it information regarding USP's pricing, services, and affiliations, but specifically declined to purchase an advertisement at that time.

29.     Nonetheless, MS Wholesale again received, by fax on August 7, 2007, an unsolicited invoice for a "Sixteenth Page" advertisement costing $595.00. Again, this invoice was sent on letterhead reading "Arkansas Tech University Official Football Program." Again, in a smaller typeface, the invoice stated "*Prepared By:* University Sports Publications" and listed a Little Rock, AR address located at 1818 North Taylor St., Dept. 196.

30.    A true and correct copy of the 2007 invoice is attached hereto as **Exhibit B.**

31.    This time, however, MS Wholesale did not pay the unsolicited invoice. Instead, MS Wholesale contacted Arkansas Tech University directly and learned that the above representations by USP were false. Notwithstanding USP's misleading print materials and oral representations, USP did not "put together" the Football Program for Arkansas Tech University, USP had not been calling on MS Wholesale at the request of the University, and MS Wholesale's money was not being remitted to support the University. Moreover, Arkansas Tech informed MS Wholesale that a *full page color* advertisement could be purchased from the University for $350.00. Again, USP was charging $595.00 for a *1/16 page black and white* advertisement in the same publication.

32.    Upon information and belief, this same unfair, deceptive, and fraudulent system of solicitation employed by USP with regard to MS Wholesale Plumbing is being employed by USP with regard to numerous other businesses throughout the community of Russellville, the State of Arkansas, and the United States of America.

## VI.
## STATUTES OF LIMITATION

33.    **Fraudulent Concealment:** Any applicable statutes of limitations have been tolled by USP's knowing and active concealment of the facts as alleged herein. USP has kept MS Wholesale and the Class Members ignorant of vital information essential to the pursuit of the claims alleged herein. MS Wholesale and the Class Members could not reasonably have discovered USP's underlying misrepresentations and material omissions.

34.    **Estoppel:** USP was and is under a continuous duty to disclose to MS Wholesale and the Class Members the true nature of its business and the extent (or lack thereof) of its

affiliation with a particular school. USP knowingly, affirmatively and actively concealed the

true nature of its business and the extent (or lack thereof) of any affiliation with a particular

school. MS Wholesale and the Class Members reasonably relied upon USP's knowing,

affirmative and/or active concealment. Based upon the foregoing, USP is estopped from relying

upon any statutes of limitations in defense of this action.

## VII.
## CLASS ACTION ALLEGATIONS

35.     Pursuant to Federal Rule of Civil Procedure 23, MS Wholesale brings this action

on behalf of itself and all others similarly situated. MS Wholesale seeks certification of a

national Class (with designation of statewide subclasses if the Court deems necessary and

appropriate) defined as follows:

> All individuals and businesses located, domiciled and/or incorporated within
> the United States who/that purchased and/or paid for advertising from
> University Sports Publications.

> Excluded from the proposed Class are (i) any Defendant, any entity in which
> any Defendant has a controlling interest or which has a controlling interest
> in, and Defendants' legal representatives, predecessors, successors, and
> assigns; (ii) the judicial officers to whom this case is assigned; and (iii) any
> member of the immediate families of excluded persons.

36.     Should this Court determine that a national Class would not satisfy the applicable

requisites for class certification, MS Wholesale seeks, in the alternative, certification of a

statewide class, defined as:

> All individuals and businesses located, domiciled and/or incorporated within
> the State of Arkansas who/that purchased and/or paid for advertising from
> University Sports Publications.

> Excluded from the proposed Class are (i) any Defendant, any entity in which
> any Defendant has a controlling interest or which has a controlling interest
> in, and Defendants' legal representatives, predecessors, successors, and

8

assigns; (ii) the judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons.

37.    MS Wholesale is informed and believes that the Plaintiff Class includes many thousands of persons and/or businesses and is so numerous that joinder of all members would be impracticable. The exact size of the Plaintiff Class and the identity of the members of the class are ascertainable from USP's business records.

38.    Questions of law and fact are common to the Plaintiff Class and predominate over questions affecting only individual members, including, *inter alia*, the following:

a.    Whether USP fraudulently portrayed itself as a representative of or an employee of a particular school;

b.    Whether USP was unjustly enriched as a result of its sale of advertising;

c.    Whether USP's sales practices are likely to deceive;

d.    Whether USP's sales practices are deceptive and/or unfair;

e.    Whether MS Wholesale and the Class Members are entitled to injunctive relief and, if so, what that relief should be; and,

f.    What other forms of relief are appropriate to remedy the injuries caused by USP.

39.    The claims asserted by MS Wholesale in this action are typical of the claims of Class Members as described above, the claims arise from the same course of conduct by USP, and the relief sought is common.

40.    MS Wholesale will fairly and adequately represent and protect the interests of Class Members. MS Wholesale has retained counsel competent and experienced in both consumer protection and class action litigation.

9

41.    A class action is superior to other methods for the fair and efficient adjudication

of this controversy, since joinder of all members is impracticable. Furthermore, because the

economic damages suffered by the individual class members may be relatively modest, albeit

significant, compared to the expense and burden of individual litigation, it would be

impracticable for Class Members to seek redress individually for the wrongful conduct alleged

herein. There will be no undue difficulty in the management of this litigation as a class action.

### VIII.
### FIRST CAUSE OF ACTION
(USP's Violation of the Arkansas Consumer Fraud and
Deceptive Business Practices Act, and Various Similar Acts)

42.    MS Wholesale hereby incorporates by reference the preceding paragraphs of this

Complaint as fully as if set forth herein.

43.    USP had a statutory duty to refrain from unfair or deceptive acts or practices in its

sale of scholastic advertising.

44.    USP engaged in conduct that violated the Arkansas Consumer Fraud and

Deceptive Business Practices Act, and the similar acts of the various states, which includes, but

is in no way limited to the following:

        a.     Misrepresenting, directly or by implication, that USP's customers and/or

potential customers' payments would be remitted to a particular school;.

        b.     Misrepresenting, directly or by implication, that USP was acting on behalf

of a particular school;

        c.     Misrepresenting, directly or by implication, that USP was affiliated with a

particular school;

        d.     Misrepresenting, directly or by implication, that a particular school

endorsed or approved of the advertising methods and fees charged by USP; and,

  e. Misrepresenting, directly or by implication, that the advertising packages sold by USP were endorsed or ratified by a particular school by, *inter alia*:

   i. Using official looking emblems that resemble emblems from a particular school;

   ii. Using letterhead bearing the word "official;"

   iii. Using letterhead bearing, in large font, the name of a particular school; and/or

   iv. Otherwise using intentionally deceptive and misleading statements and language in correspondence directed to potential consumers;

45. Had USP not engaged in the deceptive conduct described above, MS Wholesale and the Class Members would not have purchased advertising from USP.

46. USP's deceptive acts, fraudulent representations and material omissions to businesses, consumers and the public, including MS Wholesale and the Class Members, constitute unfair and deceptive acts and practices in violation of the following state consumer protection statutes:

  a. USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code § 8-19-1, *et seq.*;

  b. USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq.;*

  c. USP has engaged in unfair competition or unfair or.deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522, *et seq.;*

  d. USP has engaged in unfair competition or unfair or deceptive acts or practices in

violation of Ark. Code § 4-88-101, *et. seq.*;

  e.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Cal. Civ. Code § 1770 et seq. and Cal Bus. & Prof. Code § 17200, *et seq.*;

  f.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. § 6-1-105, *et. seq.;*

  g.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat.  § 2-1 10a*, et seq.*;

  h.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of 6 Del. Code §§ 2511, et seq. and 2531, *et. seq.*;

  i.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code § 28-3901, *et. seq.*;

  j.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. § 501.201 *et seq.*;

  k.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Stat. §§ 10-1-372, *et seq.*, 10-1-392 and 10-1-420.

  l.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. § 480-1, *et seq.*;

  m.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code § 48-601, *et seq.*;

  n.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILCS §505/1, *et seq.;*

  o.  USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. § 24-5-0.5-1, et seq.;

p.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code § 714.16, *et seq.*;

q.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. § 50-623, *et seq.*;

r.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.170, *et seq.*;

s.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401, *et seq.*;

t.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of 5 Me. Rev. Stat. § 205A, *et seq.*;

u.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Com. Law Code § 13-101, *et seq.*;

v.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. L. Ch. 93 A, *et seq.*;

w.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws Ann. § 445.90 1, *et seq.*;

x.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. §§ 325D.43, *et seq.*; 325 F.67, *et seq.*; and 325F.68 *et seq.*;

y.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1, *et seq.*;

z.     USP has engaged in unfair competition or unfair or.deceptive acts or practices in violation of Vernon's Ann. Missouri Stat. § 407.010, *et seq.*;

aa.     USP has engaged in unfair competition or unfair or deceptive acts or practices in

violation of Mont. Code Ann. § 30-14-101, *et. seq*;

bb.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq.*;

cc.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. Ann. § 598.0903, *et seq.*;

dd.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1, *et seq.*;

ee.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Rev. Stat. § 56:8-1, *et seq.*;

ff.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. § 57-12-1, *et seq.*;

gg.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349 *et seq.* and 350-e, *et seq.*;

hh.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. § 75-1.1, *et seq.*;

ii.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-12-01, et seq., and 51-15-01, *et seq.*;

jj.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01, *et seq.*;

kk.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. § 15 751, *et seq.*;

ll.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. § 6464.605, *et seq.*;

14

mm.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1, *et seq.*;

nn.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws. § 6-13.1-1, *et seq.;*

oo.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10, *et seq.;*

pp.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq.;*

qq.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code § 47-18-101, *et seq.;*

rr.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41, et seq.;

ss.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code § 13-11-1, *et seq.*;

tt.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of 9 Vt. § 2451, *et seq.*;

uu.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code § 59.1-196, *et seq.*;

vv.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code. § 19.86.0 10, *et seq.*;

ww.     USP has engaged in unfair competition or unfair or deceptive acts or practices in violation of West Virginia Code § 46A-6-101, *et seq.*;

xx.     USP has engaged in unfair competition or unfair or deceptive acts or practices in

violation of Wis. Stat. § 100.20, *et seq.;* and,

yy.     USP has engaged in unfair competition or unfair or deceptive acts or practices in

violation of Wyo. Stat. § 40-12-101, *et seq.*

47.     MS Wholesale and the Class Members relied upon USP's misrepresentations

and/or omissions in purchasing advertising.

48.     MS Wholesale will provide any required notice to appropriate entities regarding

USP's unfair and/or deceptive trade practices.

49.     As a direct and proximate result of USP's wrongful conduct, MS Wholesale and

the Class Members have been damaged.

50.     As a direct and proximate result of USP's wrongful conduct, MS Wholesale and

the Class Members are entitled to compensatory damages, attorneys' fees, and the costs of this

suit.

## SECOND CAUSE OF ACTION
(USP's Violation of the Arkansas Telephonic Sellers Statute
and Various Similar Statutes)

51.     MS Wholesale hereby incorporates by reference the preceding paragraphs of this

Complaint as fully as if set forth herein.

52.     USP engaged in a willful telephonic and print scheme to mislead its customers

and/or potential customers into believing that USP was an entity other than it was.

53.     Further, USP engaged in a willful telephonic and print scheme to mislead its

customers and/or potential customers into believing that the items and services sold by USP, as

well as the benefits thereof, were being supplied by and to a particular school as opposed to USP.

54.     USP had a statutory duty to not to willfully employ a device, scheme, or artifice

aimed at deceiving its customers and/or potential customers in connection with USP's telephone

16

solicitations.

55.     USP had a statutory duty to not to engage in any act, practice, or course of

business which operates as fraud or deceit upon its customers and/or potential customers in

connection with its telephone solicitations.

56.     USP violated the forgoing statutory duties by virtue of its willful and deceptive

acts and practices documented herein.

57.     Had USP not engaged in the deceptive conduct described above, MS Wholesale

and the Class Members would not have purchased advertising from USP.

58.     USP's willful and deceptive acts and practices are in violation of Ark. Code Ann.

§ 4-99-101 *et seq.* and similar statutes of the various States.

59.     As a direct and proximate result of USP's wrongful conduct, MS Wholesale and

the Class Members have been damaged.

60.     As a direct and proximate result of USP's wrongful conduct, MS Wholesale and

the Class Members are entitled to compensatory damages, attorneys' fees and the costs of this

suit.

### THIRD CAUSE OF ACTION
(USP's Violation of the Arkansas School Calendar Solicitation Disclosure Statute
and Various Similar Acts)

61.     MS Wholesale hereby incorporates by reference the preceding paragraphs of this

Complaint as fully as if set forth herein.

62.     USP solicits advertisements for publication in printed materials that depict school

mascots, emblems, and names in conjunction with those school's athletic events and schedules.

63.     USP does not disclose to its customers and/or potential customers whether the

school in question will receive any funds as a result of the solicitation and, if so, what percentage

17

or amount of those funds the school will receive.

64.    USP does not disclose, conspicuously or otherwise, either orally or in writing, or at any point during its sales presentations and/or solicitations, that the subject school will not receive a percentage of the funds raised by USP.

65.    USP's willful and deceptive acts and practices are in violation of Ark. Code Ann. § 4-88-501, *et seq.* and similar statutes of the various States.

66.    Had USP not engaged in the deceptive conduct described above, MS Wholesale and the Class Members would not have purchased advertising from USP.

67.    As a direct and proximate result of USP's wrongful conduct, Plaintiffs and the Class Members are entitled to compensatory damages, attorneys' fees and the costs of this suit.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Contract)

68.    MS Wholesale hereby incorporates by reference the preceding paragraphs of this Complaint as fully as if set forth herein.

69.    USP sold advertising space to MS Wholesale and the Class Members.

70.    As part of this transaction, USP impliedly promised that the consideration provided by MS Wholesale and the Class Members would be used to support a particular school.

71.    USP breached this promise.

72.    As a result of USP's breach, MS Wholesale and the Class Members have been damaged.

## FIFTH CAUSE OF ACTION
### (Unjust Enrichment)

73.    MS Wholesale hereby incorporates by reference the preceding paragraphs of this Complaint as fully as if set forth herein.

74.     This Count is pled in the alternative of any contract-based cause of action.

75.     USP received the proceeds from sales of advertising purchased by MS Wholesale and all Class Members.

76.     In exchange for MS Wholesale's, and all Class Members' money, USP provided advertising, and purported to act on behalf of a particular school.  USP was able to sell more advertising, and increase its profits, by claiming that the money spent by MS Wholesale and the Class Members supported a particular school.

77.     Given the circumstances, allowing USP to retain the proceeds from its sales of advertising would be unjust.

## PUNITIVE DAMAGES

78.     MS Wholesale hereby incorporates by reference all preceding paragraphs of this Complaint as fully as if set forth herein.

79.     The acts and omissions set forth herein were conducted intentionally by USP with the intent of misleading, deceiving, and defrauding its customers and potential customers.  USP knew or ought to have known, in the light of the surrounding circumstances, that its conduct would naturally or probably mislead and/or deceive its customers and potential customers and, in fact, intended for such a result to occur.  As a consequence, those who thought they were supporting local schools were not only misled into lining USP's pockets, but into doing so at unconscionable rates for fear of damaging their personal and professional relationship with the local school.  Punitive damages are warranted to punish the USP for this unconscionable behavior and, equally as important, to deter such predatory and deceptive conduct by USP and others entities in the future.

80.    Put bluntly, USP's deceptive conduct is no accident; deceptive conduct is its

business model. See *Amalgamated ACME Affiliates, Inc. and Univ. Sports Publ'n Co., Inc. v.*

*Minton*, 33 S.W.3d 387 (Tex. Ct. App. 2000) (attached hereto as **Exhibit C**).

## IX.
## PRAYER FOR RELIEF

**WHEREFORE,** MS Wholesale, individually and on behalf of the above-defined Class,

by counsel, prays the Court grant the following relief:

a.    An Order certifying the Class defined herein pursuant to Rule 23 of the
Federal Rules of Civil Procedure;

b.    An Order designating MS Wholesale as the Class Representative for the
Class Certified pursuant to Rule 23 and designating its counsel as Lead
Counsel for the Class;

c.    An Order enjoining USP to (i) cease misrepresenting the nature of its
company; (ii) make full disclosure to all prospective clients that USP is a
private company that is *not* affiliated with the particular school in whose
publication USP is purporting to sell advertisements; and, (iii) make full
disclosure to all prospective clients that most or all of the monies paid to
USP will be retained by USP and will not go to "support" the local college
or university.

d.    An Order awarding MS Wholesale and the Class Members damages in an
amount to be determined at trial for the wrongful and deceptive acts
complained of herein;

e.    An Order awarding punitive damages in amount sufficient to meet the
purposes of punitive damages

f.    An Order awarding attorneys' fees and costs pursuant to the Arkansas
Deceptive Practices Act and similar consumer protection statutes of the
various other States; and,

g.    For all other further just and appropriate relief in the premises.

Respectfully Submitted,

STREETT LAW FIRM, P.A.

By: _____
Alex G. Streett, ABA #65038
James A. Streett, ABA #2007092
107 West Main
Russellville, AR 72811
Telephone:    479-968-2030
Facsimile:    479-968-6253
Email: alex@streettlaw.com;
       james@streettlaw.com


PRICE WAICUKAUSKI & RILEY, L.L.P.[1]
William N. Riley (IN Bar #14941-49)
Joseph N. Williams (IN Bar #25874-49)
301 Massachusetts Avenue
Indianapolis, Indiana 46204
Telephone:    (317) 633-8787
Facsimile:    (317) 633-8797
Email: wriley@price-law.com
       jwilliams@price-law.com


ATTORNEYS FOR PLAINTIFF
M.S. WHOLE SALE PLUMBING

---

[1] Pending admission pursuant to contemporaneously filed motion to practice *pro hac vice*.

## JURY DEMAND

Comes now Plaintiff, M.S. Wholesale Plumbing, Inc. by and through counsel, and hereby

demands a trial by jury on all counts of Plaintiff's Class Action Complaint against Defendant

University Sports Publications Co., Inc.

STREETT LAW FIRM, P.A.
Alex G. Streett, ABA #65038
James A. Streett, ABA #2007092
107 West Main
Russellville, AR 72811
Telephone:     479-968-2030
Facsimile:     479-968-6253
Email: alex@streettlaw.com;
           james@streettlaw.com


PRICE WAICUKAUSKI & RILEY, L.L.P.[2]
William N. Riley (IN Bar #14941-49)
Joseph N. Williams (IN Bar #25874-49)
301 Massachusetts Avenue
Indianapolis, Indiana 46204
Telephone:     (317) 633-8787
Facsimile:     (317) 633-8797
Email: wriley@price-law.com
           jwilliams@price-law.com


ATTORNEYS FOR PLAINTIFF
M.S. WHOLE SALE PLUMBING

---

[2] Pending admission pursuant to contemporaneously filed motion to practice *pro hac vice*.



# ARKANSAS TECH UNIVERSITY
## OFFICIAL FOOTBALL PROGRAM

*Prepared By:*   University Sports Publications
1818 North Taylor Street
Dept. 196
Little Rock, AR 72207
(501) 569-9244

**\*INVOICE\***
**\*Invoice Number: 40024183\***

Mr. H C Martin
M S Wholesale Plumbing
1500 South Knoxville Ave
Russellville, AR 72802

Thank you again for your participation in the 2004 Arkansas Tech University Football Program. If you have not already done so, please remit payment at your earliest convenience. We look forward to working with you in the future.

SALE AMOUNT: $495.00, Net    SIZE: Sixteenth Page    AMOUNT DUE: $495.00, Net

Terms:

MAKE CHECK PAYABLE TO: University Sports Publications

PLEASE INCLUDE THE INVOICE NUMBER ON YOUR CHECK.

PAID 10-12-04
CK # 40933
CODE #

Please detach below and include with payment
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

University Sports Publications
1818 North Taylor Street
Dept. 196
Little Rock, AR 72207

Publication:    Arkansas Tech University Football Program

Amount Due:    $495.00

**Invoice Number:**    **40024183**

Mr. H C Martin
M S Wholesale Plumbing
1500 South Knoxville Ave
Russellville, AR 72802


EXHIBIT
A



# ARKANSAS TECH UNIVERSITY
## OFFICIAL FOOTBALL PROGRAM

*Prepared By:*   University Sports Publications
1818 North Taylor Street
Dept. 196
Little Rock, AR 72207
(501) 569-9244

August 07, 2007

Mrs. Sherry Srygley
M S Wholesale Plumbing
1500 South Knoxville Ave
Russellville, AR 72802

Dear Mrs. Srygley:

Thank you for your participation in the 2007 Arkansas Tech University Football Program. While providing a worthwhile service by supporting Arkansas Tech University, you are also gaining valuable exposure for your company as your ad will be seen by thousands of students, alumni, faculty members and school administrators. Your ad will be placed in the section entitled "Contractors Building For The Future Of Arkansas Tech University."

Again, thank you for your participation.

Sincerely Yours,

Katie Cooper
Ad Sales Director

SIZE: Sixteenth Page          AMOUNT DUE: $595.00

P.S. Please send in your business card or any other ad copy that you may have as soon as possible, as we are currently laying out the publication.

CONFIRMATION #: 25060192
MAKE CHECK PAYABLE TO: University Sports Publications



EXHIBIT
B

Westlaw.

33 S.W.3d 387
33 S.W.3d 387
(Cite as: 33 S.W.3d 387)

Page 1

▷

Amalgamated Acme Affiliates, Inc. v. Minton
Tex.App.-Austin,2000.

Court of Appeals of Texas,Austin.
AMALGAMATED ACME AFFILIATES, INC. and
University Sports Publications Co., Inc., Appellants,
v.
Perry MINTON and Dean Allen Associates, Ltd.,
Appellees.
No. 03-00-00181-CV.

Nov. 9, 2000.

Former employee sued affiliate of his former
employer for defamation and tortious interference
with contracts and business relationships, alleging
that defendant falsely asserted that he was subject to,
and in violation of, non-compete agreement. The
District Court of Travis County, 126th Judicial
District, Margaret Cooper, J., granted temporary
injunction, and defendant appealed. The Court of
Appeals, Bea Ann Smith, J., held that: (1) trial court
properly enjoined commercial speech that was false
and misleading; (2) injunction did not violate due
process rights or Texas Rules of Civil Procedure; and
(3) error as to amount of bond was waived.

Affirmed.
West Headnotes
[1] Injunction 212 ⟶138.6

212 Injunction
   212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to
Procure
         212IV(A)2 Grounds and Objections
            212k138.6 k. Nature and Extent
of Injury; Irreparable Injury. Most Cited Cases

   Injunction 212 ⟶138.18

212 Injunction
   212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to
Procure
         212IV(A)2 Grounds and Objections
            212k138.18 k. Likelihood of
Success on Merits. Most Cited Cases
To obtain temporary injunction, applicant need only
show probable right to recover on final trial and

probable injury in interim.

[2] Injunction 212 ⟶138.18

212 Injunction
   212IV Preliminary and Interlocutory Injunctions
      212IV(A) Grounds and Proceedings to
Procure
         212IV(A)2 Grounds and Objections
            212k138.18 k. Likelihood of
Success on Merits. Most Cited Cases
Applicant seeking temporary injunction does not
have to prove that it will finally prevail.

[3] Appeal and Error 30 ⟶863

30 Appeal and Error
   30XVI Review
      30XVI(A) Scope, Standards, and Extent, in
General
         30k862 Extent of Review Dependent
on Nature of Decision Appealed from
            30k863 k. In General. Most Cited
Cases
On appeal from order granting or denying request for
temporary injunction, appellate review is confined to
validity of order that grants or denies injunctive
relief.

[4] Appeal and Error 30 ⟶954(1)

30 Appeal and Error
   30XVI Review
      30XVI(H) Discretion of Lower Court
         30k950 Provisional Remedies
            30k954 Injunction
               30k954(1) k. In General.
Most Cited Cases

   Appeal and Error 30 ⟶954(2)

30 Appeal and Error
   30XVI Review
      30XVI(H) Discretion of Lower Court
         30k950 Provisional Remedies
            30k954 Injunction
               30k954(2) k. Refusing
Injunction. Most Cited Cases

   Injunction 212 ⟶1

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.


EXHIBIT
C

212 Injunction
    212I Nature and Grounds in General
        212I(A) Nature and Form of Remedy
            212k1 k. Nature and Purpose in General. Most Cited Cases

Decision to grant or deny injunction lies within sound discretion of trial court, and Court of Appeals will not reverse that decision absent clear abuse of discretion.

**[5] Appeal and Error 30 ☞863**

30 Appeal and Error
    30XVI Review
        30XVI(A) Scope, Standards, and Extent, in General
            30k862 Extent of Review Dependent on Nature of Decision Appealed from
                30k863 k. In General. Most Cited Cases

**Appeal and Error 30 ☞920(3)**

30 Appeal and Error
    30XVI Review
        30XVI(G) Presumptions
            30k920 Interlocutory Orders and Proceedings
                30k920(3) k. Injunction. Most Cited Cases

**Appeal and Error 30 ☞954(1)**

30 Appeal and Error
    30XVI Review
        30XVI(H) Discretion of Lower Court
         30k950 Provisional Remedies
            30k954 Injunction
                30k954(1) k. In General. Most Cited Cases

Court of Appeals reviewing decision on request for temporary injunction may neither substitute its judgment for that of trial court nor consider merits of lawsuit; rather, Court views evidence in light most favorable to trial court's order, indulging every reasonable inference in its favor, and determines whether order was so arbitrary as to exceed bounds of reasonable discretion.

**[6] Appeal and Error 30 ☞179(4)**

30 Appeal and Error
    30V Presentation and Reservation in Lower Court of Grounds of Review
        30V(A) Issues and Questions in Lower Court
            30k179 Sufficiency of Presentation of Questions
                30k179(4) k. Constitutional Questions. Most Cited Cases

By declining to hear motion to dissolve and proceeding with temporary injunction hearing, trial court implicitly overruled that motion and arguments therein, and specific references to constitutional rights at issue, which were brought to court's attention and implicitly overruled, preserved error. Rules App.Proc., Rule 33.1(a)(2)(A).

**[7] Constitutional Law 92 ☞1526**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)1 In General
                92k1525 Prior Restraints
                    92k1526 k. In General. Most Cited Cases
            (Formerly 92k90(3))

"Prior restraint," for purposes of right to free speech, is administrative or judicial order forbidding certain communications when issued in advance of time that such communications are to occur. Vernon's Ann.Texas Const. Art. 1, § 8.

**[8] Constitutional Law 92 ☞1527**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)1 In General
                92k1525 Prior Restraints
                    92k1527 k. Presumption of Invalidity. Most Cited Cases
            (Formerly 92k90(3))

Under State Constitution, prior restraints are presumptively unconstitutional. Vernon's Ann.Texas Const. Art. 1, § 8.

**[9] Constitutional Law 92 ☞1526**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)1 In General
                92k1525 Prior Restraints

92k1526 k. In General. Most Cited Cases
(Formerly 92k90(3))

Prior restraints may withstand constitutional scrutiny only when trial court makes specific findings supported by evidence that (1) imminent and irreparable harm will deprive litigants of just resolution of their dispute, and (2) judicial action represents least restrictive means to prevent that harm. Vernon's Ann.Texas Const. Art. 1, § 8.

**[10] Constitutional Law 92 ☜1536**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)2 Commercial Speech in General
                92k1536 k. What Is "Commercial Speech". Most Cited Cases
                (Formerly 92k90.2)

"Commercial speech," for purposes of right to free speech, is expression related solely to economic interests of speaker and its audience. Vernon's Ann.Texas Const. Art. 1, § 8.

**[11] Constitutional Law 92 ☜1539**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)2 Commercial Speech in General
                92k1539 k. False, Untruthful, Deceptive, or Misleading Speech. Most Cited Cases
                (Formerly 92k90.2)

Restraints are appropriate to prevent commercial speech from being deceptive; characteristics of commercial speech may also make inapplicable the prohibition against prior restraints. Vernon's Ann.Texas Const. Art. 1, § 8.

**[12] Constitutional Law 92 ☜1629**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(D) False Statements in General
            92k1629 k. Tortious Interference. Most Cited Cases
            (Formerly 92k90.2)

**Injunction 212 ☜138.39**

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
        212IV(A) Grounds and Proceedings to Procure
            212IV(A)3 Subjects of Relief
                212k138.36 Contracts
                    212k138.39 k. Noncompetition Covenants or Agreements. Most Cited Cases

Former employer's affiliate's speech, asserting that former employee was subject to, and in violation of, non-compete agreement was "commercial speech," and could be temporarily enjoined, under state constitution, as false and misleading; speech was intended to end contractual relationships between former employee and his customers, or to prevent contractual relationships with potential customers. Vernon's Ann.Texas Const. Art. 1, § 8.

**[13] Constitutional Law 92 ☜1539**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(A) In General
            92XVIII(A)2 Commercial Speech in General
                92k1539 k. False, Untruthful, Deceptive, or Misleading Speech. Most Cited Cases
                (Formerly 92k90.2)

To enjoy any protection under State Constitution, commercial speech must not be false or misleading. Const. art. I, § 8.

**[14] Constitutional Law 92 ☜1624**

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and Press
        92XVIII(D) False Statements in General
            92k1624 k. Deception; Misrepresentation. Most Cited Cases
            (Formerly 92k90.2)

Under State Constitution, measures may be taken to prevent deception and confusion from commercial speech even if speech is not inherently misleading but only potentially misleading. Vernon's Ann.Texas Const. Art. 1, § 8.

**[15] Injunction 212 ☜138.6**

212 Injunction

33 S.W.3d 387
33 S.W.3d 387
**(Cite as: 33 S.W.3d 387)**

212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)2 Grounds and Objections
212k138.6 k. Nature and Extent of Injury; Irreparable Injury. <u>Most Cited Cases</u>

## Injunction 212 ☜138.18

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)2 Grounds and Objections
212k138.18 k. Likelihood of Success on Merits. <u>Most Cited Cases</u>
Applicant requesting temporary injunction is not required to establish that she will prevail at trial; applicant's burden is to establish probable right of recovery following trial on merits and probable injury in interim, warranting preservation of status quo pending trial.

## [16] Injunction 212 ☜138.39

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)3 Subjects of Relief
212k138.36 Contracts
212k138.39 k. Noncompetition Covenants or Agreements. <u>Most Cited Cases</u>
In temporarily enjoining former employer's affiliate's false and misleading commercial speech asserting that former employee was subject to, and in violation of, non-compete agreement, trial court did not abuse its discretion in finding that former employee would have probable right of recovery following trial on merits; former employee testified that he had already irretrievably lost contracts and explained that it had been impossible to seek new business that required references from current contractors.

## [17] Constitutional Law 92 ☜4487

92 Constitutional Law
92XXVII Due Process
92XXVII(G) Particular Issues and Applications
92XXVII(G)25 Other Particular Issues and Applications
92k4479 Special, Summary, or

Provisional Remedies and Proceedings
92k4487 k. Preliminary Injunction; Temporary Restraining Order. <u>Most Cited Cases</u>
(Formerly 92k312(4))
Due process requires adequate and reasonable notice appropriate to nature of temporary injunction hearing; such notice involves reasonable time for preparation. <u>U.S.C.A. Const.Amend. 14</u>.

## [18] Injunction 212 ☜143(1)

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)4 Proceedings
212k143 Notice of Application
212k143(1) k. In General. <u>Most Cited Cases</u>
Notice requirement for temporary injunction implicitly requires that party be afforded adequate opportunity to be heard. <u>Vernon's Ann.Texas Rules Civ.Proc., Rule 681</u>.

## [19] Injunction 212 ☜152

212 Injunction
212IV Preliminary and Interlocutory Injunctions
212IV(A) Grounds and Proceedings to Procure
212IV(A)4 Proceedings
212k152 k. Hearing and Determination. <u>Most Cited Cases</u>
Party must be given opportunity to fully litigate issue before court grants temporary injunction.

## [20] Pretrial Procedure 307A ☜713

307A Pretrial Procedure
307AIV Continuance
307Ak713 k. Discretion of Court. <u>Most Cited Cases</u>
Grant or denial of continuance is within trial court's sound discretion.

## [21] Appeal and Error 30 ☜966(1)

30 Appeal and Error
30XVI Review
30XVI(H) Discretion of Lower Court
30k963 Proceedings Preliminary to Trial
30k966 Continuance

33 S.W.3d 387
33 S.W.3d 387
(Cite as: 33 S.W.3d 387)

30k966(1) k. In General.
Most Cited Cases
Trial court's grant or denial of continuance will not be
disturbed unless record discloses clear abuse of
discretion.

## [22] Injunction 212 ☞152

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
        212IV(A) Grounds and Proceedings to
Procure
            212IV(A)4 Proceedings
                212k152 k. Hearing and
Determination. Most Cited Cases
Trial court did not abuse its discretion in denying
motion for continuance of temporary injunction
hearing, after defendant declined court's offer to
extend temporary restraining order and grant
continuance.

## [23] Attorney and Client 45 ☞92

45 Attorney and Client
    45II Retainer and Authority
        45k87 Commencement and Conduct of
Litigation
            45k92 k. Conduct of Trial. Most Cited
Cases
Appearance by attorney who was authorized to adopt
codefendant's motion to dissolve temporary
restraining order (TRO) and to argue motion to
continue temporary injunction hearing extended to
merits of injunction.

## [24] Injunction 212 ☞204

212 Injunction
    212VI Writ, Order, or Decree
        212k202 Writ or Order
            212k204 k. Form and Requisites. Most
Cited Cases
Trial court must provide reasons it believes
applicant's probable right of recovery will be
endangered if it does not grant injunction. Vernon's
Ann.Texas Rules Civ.Proc., Rule 683.

## [25] Injunction 212 ☞157

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
        212IV(A) Grounds and Proceedings to
Procure
            212IV(A)4 Proceedings

              212k156 Order on Application
                212k157 k. In General. Most
Cited Cases
Trial court's order granting temporary injunction
sufficiently stated that defendant's conduct was
interfering with plaintiff's relationships with his
customers and advertisers and that as result of this
interference, plaintiff was likely to suffer immediate
and irreparable injury. Vernon's Ann.Texas Rules
Civ.Proc., Rule 683.

## [26] Injunction 212 ☞157

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
        212IV(A) Grounds and Proceedings to
Procure
            212IV(A)4 Proceedings
              212k156 Order on Application
                212k157 k. In General. Most
Cited Cases
Injunction prohibiting affiliate of former employer
from making false and misleading statements to
former employee's customers reasonably identified
former employee's actual and potential customers and
advertisers; 15-page list of advertisers was attached
to injunction, which also identified specific
customers. Vernon's Ann.Texas Rules Civ.Proc.,
Rule 683.

## [27] Injunction 212 ☞157

212 Injunction
    212IV Preliminary and Interlocutory Injunctions
        212IV(A) Grounds and Proceedings to
Procure
            212IV(A)4 Proceedings
              212k156 Order on Application
                212k157 k. In General. Most
Cited Cases
Injunction prohibiting affiliate of former employer
from using terms "engaged in a scam," "engaged in
unfair competition," and "hurt" in reference to former
employee described acts sought to be restrained in
reasonable detail. Vernon's Ann.Texas Rules
Civ.Proc., Rule 683.

## [28] Appeal and Error 30 ☞190(2)

30 Appeal and Error
    30V Presentation and Reservation in Lower
Court of Grounds of Review
        30V(B) Objections and Motions, and
Rulings Thereon

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

33 S.W.3d 387
33 S.W.3d 387
(Cite as: 33 S.W.3d 387)

30k190 Proceedings Relating to Provisional Remedies
30k190(2) k. Injunction. Most Cited Cases
Alleged error as to amount of bond for temporary injunction was waived, where appellant raised issue for first time on appeal. Rules App.Proc., Rule 33.1.

*390 Ralph A. Rash,Rash, Laney, Chapman & Schreiber, Austin, for Amalgamated.
John J. McKetta III, Graves, Dougherty, Hearon & Moody, P.C., Austin, for appellees.
H. Robert Powell, Hughes & Lice, L.L.P., Austin, for University.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and PATTERSON.
BEA ANN SMITH, Justice.
Appellant University Sports Publications Co., Inc. (University Sports) brings this appeal from a temporary injunction ordering it to refrain from making certain representations to customers and advertisers of appellees Dean Allen Associates, Ltd. (Dean Allen) and its founder Perry Minton.[FN1] University Sports asserts five issues on appeal including constitutional free speech and due process arguments. We overrule these contentions and affirm the trial court's ruling.

FN1. We will refer to Dean Allen and Perry Minton collectively as Minton.

## FACTUAL AND PROCEDURAL BACKGROUND

University Sports, a New York corporation, sells advertising space in sporting-event programs. Its affiliate, Amalgamated Acme Affiliates, Inc. (Amalgamated Acme), a Texas corporation, conducts market research. Minton worked for Amalgamated Acme until April 23, 1999. On July 8, 1999, Minton formed Dean Allen to sell advertising space for sports-event publications. Dean Allen competes directly with Amalgamated Acme and University Sports.

In October 1999, Minton sued Amalgamated Acme to establish both parties' rights and obligations to one another. In the original petition, Minton alleged that Amalgamated Acme falsely asserted to both Minton and his customers that he was subject to, and in violation of, a non-compete agreement. Minton maintains that he did not sign a non-compete

agreement and that the only possible agreement that Amalgamated Acme alludes to is an employee-confidentiality agreement. The record does not include any agreements signed by Minton. In his suit, Minton claimed that Amalgamated Acme's assertions were defamatory and constituted tortious interference with his contracts and business relationships. On February 14, 2000, Minton amended his petition joining Dean Allen as a co-plaintiff and University Sports as a defendant, simultaneously *391 seeking a temporary restraining order (TRO) to prevent the defendants from making certain representations about Minton. The trial court granted the TRO that same day, and set a hearing on the temporary injunction for the afternoon of February 22.

The citation, amended petition, and TRO were served on University Sports at its New York offices on February 16. In the meantime, Amalgamated Acme filed a motion to dissolve the TRO. On February 22, based on information gleaned during a deposition that morning, Minton notified Amalgamated Acme that he had non-suited his claims for injunctive relief against it and would only seek such relief against University Sports. University Sports authorized Ralph Rash, who was representing Amalgamated Acme, to adopt the motion to dissolve the TRO and argue the motion's dissolution on University Sports' behalf at the hearing. Further, University Sports instructed Rash to seek a continuance of the temporary injunction hearing. University Sports did not authorize Rash to address the merits of the temporary injunction itself.

At the hearing on the temporary injunction, the trial court offered to grant the motion for continuance and extend the TRO. Rash opposed extending the TRO, contending that it was overly broad and enjoined legal conduct. The trial court consequently denied the motion for continuance and declined to hear the motion to dissolve the TRO, explaining that a ruling on the temporary injunction would make the motion moot. Because Rash was not authorized to argue the merits of the temporary injunction, he requested leave of the court and was dismissed. The court proceeded with the temporary injunction hearing.

Minton testified that University Sports employees had contacted between forty and fifty of his customers falsely holding themselves out as representatives of the Austin Independent School District (AISD) and the University of Texas. These individuals then proceeded to tell the customers that Minton did not have a contract with either school,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that Minton was under investigation, and that the customers should withhold payments to Minton. One set of materials in the record suggests that University Sports drafted letters of complaint on the customers' own letterhead for them to sign and return to University Sports. Minton introduced evidence showing how University Sports circulated these letters to other customers and forwarded the complaints to Pat Forgione, superintendent of AISD, and Dr. Larry Faulkner, president of the University of Texas. Several customers stopped paying and performing under their contracts with Minton after receiving these letters.

One University Sports employee falsely identified himself as Perry Minton to one of Minton's customers; the customer then discovered the caller was not Minton. A heated conversation ensued, and the University Sports employee told the Texas customer that he would have to fly to New York for a seven-hour deposition.

In another incident, University Sports employee Julie Wong impersonated Felicia Martinez. Martinez is the secretary for the athletic director of the Fort Worth Independent School District. Minton and University Sports were competing for a contract with that school district. Wong called Minton, identifying herself as Martinez. She told him that the school district was "looking to start negotiations," but needed references from current projects. Minton began to share his confidential list of customers with Wong until he became suspicious. He asked to speak to the athletic director, but Wong said he was unavailable and quickly hung up. Minton immediately called the athletic director's office, and Martinez denied having just talked with him.

Minton told the court that when he first formed Dean Allen, officers of University Sports told him that it was unfortunate he *392 had chosen to compete with University Sports because it "had just spent $600,000 in 30 something lawsuits on a multi-state level to put the last folks that had tried this business out of business." Minton testified that due to University Sports' conduct his company was already having "serious trouble," losing some customers who received the complaint letters. Further, he stated that University Sports' conduct "makes it impossible for me to seek new business, because naturally the new businesses that I'm prospecting want to speak to the people that I'm currently doing business with." He concluded, "I firmly believe that if I don't receive this injunction, I will be put out of business."

The trial court granted the temporary injunction. University Sports, the only party enjoined, brings this interlocutory appeal asking us to dissolve the temporary injunction. See Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(4) (West Supp.2000).

### STANDARD OF REVIEW

[1][2][3][4][5] To obtain a temporary injunction, an applicant need only show a probable right to recover on final trial and probable injury in the interim. See Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc., 997 S.W.2d 651, 657 (Tex.App.-Austin 1999, pet. dism'd w.o.j.). The applicant seeking a temporary injunction does not have to prove that it will finally prevail in the litigation. Transport Co. of Tex. v. Robertson Transps., Inc., 152 Tex. 551, 261 S.W.2d 549, 552 (1953). The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex.1993). In an appeal from an order granting or denying a request for a temporary injunction, appellate review is confined to the validity of the order that grants or denies the injunctive relief. Universal Health Servs., Inc. v. Thompson, 24 S.W.3d 570, 576 (Tex.App.-Austin 2000, no pet.). The decision to grant or deny the injunction lies within the sound discretion of the court, and we will not reverse that decision absent a clear abuse of discretion. Id. This Court may neither substitute its judgment for that of the trial court nor consider the merits of the lawsuit. See id. Rather, we view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order was so arbitrary as to exceed the bounds of reasonable discretion. See id.

### DISCUSSION

#### I. Free Speech

#### A. Prior Restraint

[6] University Sports characterizes the temporary injunction as a prior restraint on its right to free speech, which is prohibited by the United States and Texas Constitutions. See U.S. Const. amend. I; Tex. Const. art. I, § 8; see also Davenport v. Garcia, 834 S.W.2d 4, 10 (Tex.1992). FN2 The

33 S.W.3d 387
33 S.W.3d 387
(Cite as: 33 S.W.3d 387)

order commands University Sports to desist and refrain from:

> FN2. Minton contends that University Sports waived its constitutional free speech arguments because no such arguments appear in the record. To preserve error for appellate review, a party must have presented to the trial court a timely request, objection, or motion stating its specific complaint. Tex.R.App. P. 33.1; *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 600 (Tex.App.-Amarillo 1995, no writ). The motion to dissolve the TRO, adopted by University Sports, incorporated free speech arguments based on article I, section 8 of the Texas Constitution and the Fourteenth Amendment of the United States Constitution. *Cf. Valdez v. Valdez,* 930 S.W.2d 725, 728 (Tex.App.-Houston [1st Dist.] 1996, no writ) (explaining that party could preserve error by joining in motion of another party); *Martinez v. State,* 833 S.W.2d 188, 191 (Tex.App.-Dallas 1992, writ ref'd) ("A defendant may adopt an objection made by a codefendant and, thus, preserve error when there is sufficient indication in the record of his intent to adopt the objection."). By declining to hear the motion to dissolve and proceeding with the temporary injunction hearing, the trial court implicitly overruled that motion and its arguments therein. *See* Tex.R.App. P. 33.1(a)(2)(A); *Hardman v. Dault,* 2 S.W.3d 378, 381 (Tex.App.-San Antonio 1999, no pet.). The specific references to the constitutional rights at issue, which were brought to the court's attention and implicitly overruled by the court, preserved error. *See Miller Paper Co.,* 901 S.W.2d at 600.

**\*393** (a) communicating to the Austin Independent School District, the University of Texas, Host Communications, Inc., Longhorn Sports Network, the University of Texas-San Antonio, any businesses known to be a customer of Dean Allen, and/or any businesses known to be a potential customer of Dean Allen (including all employees and agents of all of the foregoing businesses) that Dean Allen or Minton has committed fraud, made misrepresentations, engaged in a scam, engaged in unfair competition, hurt the Austin Independent School District, hurt the University of Texas, hurt any other customer,

violated any contract or agreement, or violated any law;

(b) communicating to the advertisers on Exhibit A [attached to the temporary injunction], any business known to be an advertiser with Dean Allen, and/or any business known to be a potential advertiser with Dean Allen (including all employees and agents of all the foregoing businesses) that Dean Allen or Minton has committed fraud, made misrepresentations, engaged in a scam, engaged in unfair competition, hurt the Austin Independent School District, hurt the University of Texas, hurt any other customer, violated any contract or agreement, or violated any law;

(c) suggesting or communicating to Dean Allen's customers or advertisers that they should not pay their invoices to Dean Allen;

(d) representing itself as being representatives of the Austin Independent School District, the University of Texas, the University of Texas-San Antonio, or any other school district or agency, including any department or agency thereof.

(e) representing itself as being representatives of Dean Allen, including any employee or agent of Dean Allen.

The Texas Constitution provides that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege...." Tex. Const. art. I, § 8. This free speech right, in some aspects, is interpreted more broadly than its federal equivalent. *Davenport,* 834 S.W.2d at 8-9. Because we decide this issue under the Texas Constitution, we need not reach the constitutionality of the injunction under the federal constitution, which would not grant any additional relief.

[7][8][9] A prior restraint is an administrative or judicial order forbidding certain communications when issued in advance of the time that such communications are to occur. *Reuters Am., Inc. v. Sharp,* 889 S.W.2d 646, 653 n. 8 (Tex.App.-Austin 1994, writ denied) (quoting *Alexander v. United States,* 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)). Under the Texas Constitution, prior restraints are presumptively unconstitutional. *Davenport,* 834 S.W.2d at 10. Courts prefer to sanction a speaker after, rather than before, the speech occurs. *Id.* at 9. Prior restraints may withstand constitutional scrutiny only when a trial court makes specific findings supported by the evidence that (1) an imminent and irreparable harm will deprive litigants of a just resolution of their

dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.   *Id.* University Sports asserts that the injunction was invalidly granted because the court failed to make these specific findings.

### B. Commercial Speech

[10][11] Minton asserts that the enjoined speech is not protected by the constitution*394 because it is commercial speech that is false and misleading.[FN3] Commercial speech is "expression related solely to the economic interests of the speaker and its audience." *Central Hudson Gas & Elec. v. Pub. Serv. Comm'n,* 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).   Because of the nature of commercial speech, some forms of regulation are permissible.  *State Bd. of Med. Exam'rs v. Burzynski,* 917 S.W.2d 365, 370 (Tex.App.-Austin 1996, writ denied).   Commercial speech is more objective, and hence more verifiable, than other types of speech. *Friedman v. Rogers,* 440 U.S. 1, 10, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979).   Further, "because of its importance to business profits, and because it is carefully calculated, [it] is also less likely than other forms of speech to be inhibited by proper regulation." *Id.* For these reasons, restraints are appropriate to prevent speech from being deceptive.  *Id.* These characteristics of commercial speech "may also make inapplicable the prohibition against prior restraints." *Id.* (citing *Virginia Pharmacy Bd. v. Virginia Consumer Council,* 425 U.S. 748, 775-81, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (Stewart, J., concurring)).

FN3. Minton also contends that University Sports' expression amounts to conduct that is not protected by either the First Amendment or the Texas Constitution. We do not reach that argument today.

University Sports disputes that the enjoined language is commercial speech.   It asserts that commercial speech must promote a commercial transaction. *See Central Hudson,* 447 U.S. at 562, 100 S.Ct. 2343. *Central Hudson* involved advertising by a gas and electric company that promoted the use of electricity. *Id.* at 558.   The Supreme Court noted that it has traditionally distinguished speech proposing a commercial transaction from other varieties of speech. *Id.* at 562.

[12] We decline to define commercial speech as

narrowly as University Sports suggests.   Individual communications opposing a proposed automobile mall were held clearly to be commercial speech because they related solely to the economic interests of the speaker and its audience. *ES Dev., Inc. v. RWM Enters., Inc.,* 939 F.2d 547, 558 n. 6 (8th Cir.1991) (affirming temporary injunction but modifying it to last for only three years), *cert. denied,* 502 U.S. 1097, 112 S.Ct. 1176, 117 L.Ed.2d 421 (1992).   In *ES Development,* car dealers sent letters to their manufacturers opposing a proposed automobile mall.   As a result of these letters, Ford, Oldsmobile, and Cadillac pulled out of negotiations to place franchises in the automobile mall.   The court held that these letters constituted commercial speech.  *Id.* Similarly here, University Sports' speech is intended to end contractual relationships between Minton and his customers, or to prevent contractual relationships with potential customers.   We hold that the speech in question is commercial speech.

[13][14] To enjoy any protection, commercial speech must not be false or misleading.   *Burzynski,* 917 S.W.2d at 370 (quoting *Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343); *Owens v. State,* 820 S.W.2d 912, 914 (Tex.App.-Houston [1st Dist.] 1991, writ ref'd) ("Intentionally false or misleading statements made in a commercial context are not protected....").   " '[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it....' " *Burzynski,* 917 S.W.2d at 371 (quoting *Central Hudson,* 447 U.S. at 563-64, 100 S.Ct. 2343). Measures may be taken to prevent deception and confusion even if the speech is not inherently misleading but only potentially misleading. *Gonzalez v. State Bar of Tex.,* 904 S.W.2d 823, 829 (Tex.App.-San Antonio 1995, writ denied).

By posing as AISD or the University of Texas or as Minton himself, University *395 Sports took inherently misleading actions.   Its allegations that Minton committed fraud, engaged in misrepresentations and scams, hurt its customers, and violated contractual agreements and the law, coupled with suggestions that Minton's clients refuse to pay their invoices, are potentially misleading.   Minton testified that some customers had refused to pay based on University Sports' allegations.

We conclude that the trial court properly enjoined speech in a commercial context that caused deception and confusion.   Such commercial speech is not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

constitutionally protected.[FN4] Consequently, the prohibition against prior restraints is inapplicable here.[FN5] See *Friedman*, 440 U.S. at 10, 99 S.Ct. 887.

FN4. We reach a similar result when we consider that the communications enjoined here are private. Courts have refrained from protecting speech that is "solely of personal interest." *Jones v. Memorial Hosp. Sys.*, 677 S.W.2d 221, 224 (Tex.App.-Houston [1st Dist.] 1984, no writ) (analyzing federal First Amendment cases for guidance regarding Texas Constitution article 1, section 8). "To be entitled to [constitutional] protection, speech must relate to matters of 'political, social, or other concern to the community.' " *Id.* (citing *Connick v. Myers*, 461 U.S. 138, 150, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). In a decision with facts that parallel this case, the court upheld a temporary injunction. *Karamchandani v. Ground Tech., Inc.*, 678 S.W.2d 580, 582 (Tex.App.-Houston [14th Dist.] 1984, writ dism'd w.o.j.). Nand Karamchandani, a stockholder, filed suit seeking liquidation of Ground Technology's assets. Karamchandani subsequently sent letters to Ground Technology's clients requesting assistance in the lawsuit. Ground Technology was granted a temporary injunction to enjoin Karamchandani from writing letters that would interfere with Ground Technology's contractual relationships. Seeking to dissolve the temporary injunction, Karamchandani argued that it was a restraint on his free speech, citing article 1, section 8 of the Texas Constitution. The court disagreed: "The injunction was granted to prevent harm from private communication, and to preserve the status quo. The communication was to specific individuals with the intention of coercing them to discontinue business with [Ground Technology]." *Id.; see also Menna v. Romero*, No. 04-99-00475-CV, 2000 WL 5003, 2000 Tex.App. LEXIS 44 (Tex.App.-San Antonio January 5, 2000, no pet. h.). Here University Sports was personally contacting Minton's clients by telephone and fax attempting to persuade them to sign complaint letters about Minton and to refuse to pay their invoices.

University Sports was contacting specific individuals using private means of communication, attempting to induce-and in some cases successfully inducing-these individuals to discontinue contracts with Minton. University Sports was engaging in private communication, which is not constitutionally protected.

FN5. We distinguish *Markel v. World Flight Inc.*, 938 S.W.2d 74 (Tex.App.-San Antonio 1996, no writ). The *Markel* court considered an injunction that prevented any speech with specific individuals. Here the injunction is not a blanket prohibition on speech. It does not prevent University Sports from promoting its own services to Minton's customers and advertisers, or potential customers and advertisers. Nor does it prevent University Sports from comparing its own services to those of Minton. Nonetheless, if *Davenport* applies here, Minton has satisfied the two-part test. As discussed *infra*, first, evidence in the record indicates that Minton has and will suffer imminent and irreparable harm absent the injunction. Second, as discussed with regard to University Sports' due process arguments, the injunction represents the least restrictive means to prevent that harm. The injunction is broad enough to prevent University Sports from circumventing the injunction, but not so broad as to affect University Sports' lawful and proper exercise of its rights.

### C. Temporary Injunction

[15][16] An applicant requesting a temporary injunction is not required to establish that she will prevail at trial. *Walling*, 863 S.W.2d at 58. The applicant's burden is to establish a probable right of recovery following a trial on the merits and a probable injury in the interim, warranting preservation of the status quo pending the trial. *Id.* at 57. We hold that the trial court did not abuse its discretion in finding that Minton would have a probable right of recovery following a trial on the merits.

Minton demonstrated that he has been injured and will likely be irreparably injured should the injunction be dissolved. Minton testified at the hearing that he has already irretrievably lost contracts due to *396 University Sports' conduct. He further

explained that it has been impossible to seek new business that requires references from current contractors.   He stated, "I firmly believe that if I don't receive this injunction, I will be put out of business."   Damages after the fact are inadequate when difficulty arises in calculating damages or when an award arrives too late.   *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.,* 965 S.W.2d 18, 24 (Tex.App.-Houston [1st Dist.] 1998, no pet.) .   We hold that the trial court did not abuse its discretion in granting the temporary injunction.   We overrule University Sports' first point of error.

### II. Due Process

University Sports argues that the trial court violated Texas Rule of Civil Procedure 681 and its constitutional right to due process by holding the temporary injunction hearing without allowing it a reasonable amount of time to obtain counsel and prepare for the hearing.   *See* Tex.R. Civ. P. 681; *Lowe v. City of Arlington,* 453 S.W.2d 379, 382 (Tex.Civ.App.-Fort Worth 1970, writ ref'd n.r.e.).   Further, it complains that the court entered an order that does not comply with Texas Rule of Civil Procedure 683 because the injunction is not specific as to why plaintiffs would suffer irreparable injury, and because the order is vague and overbroad.   *See* Tex.R. Civ. P. 683.

[17][18][19] Due process requires adequate and reasonable notice appropriate to the nature of the hearing.   *Lowe,* 453 S.W.2d at 382.   "Such notice involves a reasonable time for preparation."   *Id.* Rule 681 reads:   "No temporary injunction shall be issued without notice to the adverse party."   Tex.R. Civ. P. 681.   This notice requirement implicitly requires that a party must be afforded an adequate opportunity to be heard.   *City of Austin v. Texas Pub. Employees Ass'n,* 528 S.W.2d 637, 640 (Tex.Civ.App.-Austin 1975, no writ).   A party must be given an opportunity to fully litigate the issue before the court grants the injunction.   *Tober v. Turner of Tex., Inc.,* 668 S.W.2d 831, 836 (Tex.App.-Austin 1984, no writ).

[20][21][22] University Sports maintains that it was not given an opportunity to obtain counsel and prepare for the hearing, or to be heard and litigate the injunction.   The trial court did not foreclose any such opportunity.   University Sports argues that the trial court "could easily have extended the temporary restraining order an additional fourteen days for 'good cause,' and continued the hearing on the

temporary injunction until March 14, 2000."   However, when the court offered to extend the temporary restraining order and grant the motion for continuance, University Sports did not accept. University Sports cannot now complain that the court violated Texas rules, or its constitutional right of due process, when University Sports was given an opportunity to accept a continuance on reasonable terms but rejected it.   The grant or denial of a continuance is within the trial court's sound discretion.   *Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex.1986).   The trial court's action will not be disturbed unless the record discloses a clear abuse of discretion.   *Id.* By denying University Sports' motion for continuance on these facts, the trial court did not abuse its discretion.[FN6]

> FN6. We also note that University Sports was served February 16 with notice of the temporary-injunction hearing set for February 22.   University Sports neither explained to the trial court why it did not obtain counsel, nor its efforts to obtain counsel.   Without such testimony and in light of Rash's authorization to argue at least some points, we cannot say the trial court's action was arbitrary and unreasonable. *See Computize, Inc. v. NHS Communications,* 992 S.W.2d 608, 613 (Tex.App.-Texarkana 1999, no pet.).

[23] University Sports also asserts that it did not have counsel present at the temporary injunction hearing because Rash was only making a partial or special appearance on its behalf.   Rash was authorized to adopt Amalgamated Acme's motion to dissolve the TRO, and to argue the \*397 motion to continue the temporary injunction hearing. University Sports did not authorize Rash to argue the merits of the injunction.   University Sports does not offer any support for its argument that an attorney can make a partial or special appearance as to some matters but not others while still preserving the party's rights on appeal as to those matters it refused to permit the attorney to argue.

We note that University Sports uses Rash's "partial appearance" to work in its favor in two contrary ways.   Rash represented University Sports in order to adopt the motion to dissolve and to preserve the constitutional arguments it now advances.   On the other hand, University Sports claims Rash was not authorized to represent University Sports on the merits of the injunction, so it was error to continue

33 S.W.3d 387
33 S.W.3d 387
(Cite as: 33 S.W.3d 387)

with the hearing.   University Sports cannot have it both ways.   Rash's limited representation was at University Sports' direction.   University Sports cannot now make any due process complaint about the absence of counsel at the temporary injunction hearing.

[24]  We next turn to Rule 683, which reads in relevant part: "Every order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail ... the act or acts sought to be restrained...." Tex.R. Civ. P. 683.   This rule requires that the trial court provide the reasons it believes the applicant's probable right of recovery will be endangered if it does not grant the injunction.   *Transport Co., 261 S.W.2d at 553.*   The injunction here states:
[T]he Court finds and concludes (a) that Plaintiffs will probably prevail on the trial of this cause, including that University Sports Publications Co. Inc. has wrongfully misrepresented itself to and wrongfully communicated with customers and advertisers of Dean Allen with the intent to interfere in such relationships;   (b) that immediate and irreparable injury, loss or damage will result to Plaintiffs before trial ... unless Defendants University Sports Publications Co., Inc. is forthwith enjoined ... and (d) that without the issuance of this temporary injunction, said Defendant will alter the status quo and Plaintiffs will be without any adequate remedy at law.

University Sports contends that this language fails to explain why the applicant's probable right of recovery will be endangered.   Minton, on the other hand, compares the language in the present injunction to that in *Inex Indus., Inc. v. Alpar Resources, Inc.,* 717 S.W.2d 685 (Tex.App.-Amarillo 1986, no writ).   In that case, the court held that the trial court sufficiently stated its reasons "that Wallace and Inex would, if allowed to continue, alter the status quo, tend to make ineffectual a judgment in favor of Alpar, and leave Alpar without an adequate remedy at law." *Id.* at 688.   These recitations were held to satisfy Rule 683 as interpreted by the supreme court. *Id.*

[25]  Here the trial court sufficiently stated that University Sports' conduct was interfering with Minton's relationships with his customers and advertisers and that as a result of this interference, Minton was likely to suffer immediate and irreparable injury.   In *Transport Co.,* a proper showing of a probable right of recovery was made by

outlining the manner in which the defendant had interfered with the plaintiffs' customers, and then stating "that such interference with customers and markets and diversion of freight tonnage and revenues would result in irreparable and inestimable damage to the plaintiffs." *Transport Co., 261 S.W.2d at 553.*   We are unable to distinguish the language in *Transport Co.* from the present injunction.   Therefore, we hold that the language of the injunction sufficiently describes how Minton's probable right of recovery will be endangered.

University Sports next asserts that the injunction fails to describe in reasonable detail the acts it seeks to restrain in violation*398 of Rule 683.   *See* Tex.R. Civ. P. 683.   It argues that the injunction fails to identify Minton's actual customers and advertisers other than the AISD, the University of Texas, and the University of Texas-San Antonio.   It complains that the injunction also does not identify Minton's potential customers or advertisers.   University Sports claims that the terms "engaged in a scam," "engaged in unfair competition," and "hurt" are not capable of reasonable construction and thus their inclusion violates Rule 683.   *See id.*   Finally, it asserts that the terms "violated a law" or "violated a contract" are overly broad.

[26]  We hold that to the extent the injunction does not specifically name Minton's actual customers and advertisers, University Sports has admitted it can identify these parties.   First, attached to the injunction is a fifteen-page list of Minton's advertisers.   Second, the injunction identifies specific customers:  AISD, the University of Texas, Host Communications, Inc., Longhorn Sports Network, and the University of Texas-San Antonio.   Third, University Sports noted in its brief to this Court that it "presumably attempts to sell their services to a similar client base."   The injunction, therefore, reasonably identifies Minton's actual and potential customers.

[27]  University Sports next claims that the terms "engaged in a scam," "engaged in unfair competition," and "hurt" are not capable of reasonable construction.   The terms need not be construed. The injunction prohibits University Sports from using those specific terms *in reference to Minton.*   For example, University Sports may not tell AISD that Minton has "engaged in a scam." We hold that the use of these terms in the order does not violate Rule 683.

Finally, University Sports maintains that an

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

33 S.W.3d 387
33 S.W.3d 387
**(Cite as: 33 S.W.3d 387)**

injunction "must not be so broad as to enjoin a defendant from activities which are lawful and a proper exercise of his rights." *Villalobos v. Holguin,* 146 Tex. 474, 208 S.W.2d 871, 875 (1948). It argues that in the event Minton violates a contract or law, University Sports has the right to make statements to that effect. Minton counters that an injunction "must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written." *Republic W. Ins. Co. v. State,* 985 S.W.2d 698, 706 (Tex.App.-Austin 1999, pet. dism'd w.o.j.) (quoting *San Antonio Bar Ass'n v. Guardian Abstract & Title Co.,* 156 Tex. 7, 291 S.W.2d 697, 702 (1956)). We hold that the injunction is broad enough to prevent University Sports' circumvention, but narrow enough to allow University Sports to engage in lawful and proper exercises of its rights-to continue soliciting and selling its services to these advertisers and customers. We overrule University Sports' second, third, and fourth points of error.

### III. Bond

[28] University Sports contends that the trial court abused its discretion in setting a $500 bond, which it claims is grossly disproportionate to the injury it will incur from the injunction. We hold that University Sports waived this issue. University Sports was on notice that the $500 bond set for the TRO would be extended to the injunction. However, University Sports did not authorize Rash to argue this point to the court, and raises it for the first time on appeal. The issue, then, was not preserved for our review. *See* Tex.R.App. P. 33.1. University Sports points to nothing in the record to show the bond was insufficient. *See Biodynamics, Inc. v. Guest,* 817 S.W.2d 128, 131 (Tex.App.-Houston [14th Dist.] 1991, writ dism'd by agr.) (overruling point of error). We overrule University Sports' fifth point of error.

### CONCLUSION

We hold that the trial court properly enjoined commercial speech that is false *399 and misleading, that the injunction did not violate due process rights or the Texas Rules of Civil Procedure, and that University Sports waived error as to the amount of the bond. We overrule University Sports' points of error and affirm the order granting the temporary injunction.

Tex.App.-Austin,2000.
Amalgamated Acme Affiliates, Inc. v. Minton
33 S.W.3d 387

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.