**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**M.S. WHOLESALE PLUMBING, INC.,
Individually, and on behalf of a class of
all others similarly situated**

**PLAINTIFFS**

**vs.**               **Case No. 4-07 CV00000730 SWW**

**UNIVERSITY SPORTS PUBLICATIONS
CO., INC.**               **DEFENDANT**

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS

Defendant University Sports Publications Co., Inc. ("USP"), respectfully submits this Motion to Dismiss the Complaint ("Cplt.") filed by M.S. Wholesale Plumbing, Inc. ("MS Wholesale"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

MS Wholesale purports to bring this nationwide consumer class action based on a single transaction three years ago (in 2004) in which, by its own admission, it received exactly what it bargained for:  an advertisement in the Arkansas Tech University ("Arkansas Tech") football program.  According to the allegations in its Complaint, MS Wholesale paid USP for an advertisement in the Arkansas Tech football program.  The Complaint also expressly concedes that the advertisement did in fact appear in the football program.

In an effort to turn this simple transaction into a federal action, however, MS Wholesale now claims that, in violation of the Arkansas Deceptive Trade Practices Act, it was misled about the exact nature of the relationship between Arkansas Tech and USP.  But the allegations in the

- 1 -

Complaint, along with the documents appended to it and referenced therein, expressly refute the idea that there was any confusion on the part of MS Wholesale. Indeed, the allegations in the Complaint plainly establish that MS Wholesale has no cause of action against USP, either individually, or as the head of a class.

First, MS Wholesale fails to allege adequately any actionable misstatement on the part of USP. Instead, the Complaint establishes that MS Wholesale knew it was purchasing advertising from a third party, not from Arkansas Tech. Second, MS Wholesale fails to allege adequately that it relied on any of the purportedly misleading statements made by USP. Third, MS Wholesale fails to allege actionable damages under the Arkansas consumer protection laws. Fourth, the Complaint fails to establish a right to quasi-contractual damages, both because of the existence of a written agreement and because MS Wholesale was not a beneficiary of the promise they allege was breached – payments in support of Arkansas Tech. Finally, even if the Court were inclined to allow MS Wholesale's claims to proceed, it should not be as a class action. As two Arkansas courts have recently determined, consumer fraud cases like the one alleged here are ill suited to class treatment.

## BACKGROUND

As alleged in the Complaint, USP is a New York corporation and is the nation's largest publishing and print advertising sales agent for collegiate and professional sports publications. Cplt. ¶¶ 15-16. USP places advertisements for hundreds of colleges and universities across North America. In addition to its publishing activities, USP also provides a wide range of services relating to developing, designing and producing advertisements in sports publications. Cplt. ¶ 17. One of those services entails USP purchasing advertising space in collegiate sports

publications, such as athletic programs and yearbooks, and reselling the advertising space to third parties. Cplt. ¶¶ 6, 15. Since at least 2004, USP has been placing advertisements in the official football program for Arkansas Tech, a state university founded in 1909 in Russellville, Arkansas.[1]  Cplt. ¶ 13, 20.

In July 2004, USP contacted MS Wholesale, a plumbing wholesaler in Russellville, about placing an advertisement in the Arkansas Tech football program. Cplt. ¶¶ 19-20.  At the time USP contacted MS Wholesale, the company was already well familiar with Arkansas Tech and its football program. The founder and president of MS Wholesale attended Arkansas Tech. Cplt. ¶ 14. Both he and the company had been "enthusiastic and devoted" supporters of the University and its athletic programs for more than 20 years. Cplt. ¶ 14. In addition, MS Wholesale had direct contact with the athletic director at Arkansas Tech. Cplt. ¶ 31. MS Wholesale also had extensive business contacts with the University, providing maintenance personnel with plumbing supplies "on an almost daily basis." Cplt. ¶13.

Despite this long history of support, MS Wholesale claims that it initially declined to purchase an advertisement in the Arkansas Tech program. MS Wholesale alleges that its first contact with USP came when it received an allegedly "unsolicited" invoice that billed the company for a one-sixteenth page advertisement in the Arkansas Tech program. Cplt. ¶¶ 20-21. Rather than contacting USP or Arkansas Tech, however, MS Wholesale alleges that it simply returned the invoice unpaid. Cplt. ¶ 21.

---

[1] As but one example of the omissions in the Complaint, MS Wholesale fails to mention that USP in fact entered into a contract with Arkansas Tech dated June 9, 2004 to provide advertising sales services for the football program. The complaint also fails to mention that ATU and USP performed under the contract according to its terms: the 2004, 2005, and 2006 ATU football programs each contained advertisements sold by USP. While it is not germane at this stage of the litigation and the assessment of this motion to dismiss, the agreement nevertheless provided that Arkansas Tech would receive $1,000 for each page of advertising placed by USP, which was "solely responsible for all solicitation, billing and collection activities and costs associated with the advertising it places."

As alleged in the Complaint, the invoice MS Wholesale received plainly stated that it was not from Arkansas Tech, but rather that it had been "prepared by" University Sports Publications. Cplt. ¶ 20. The invoice also clearly stated that payment should be made to University Sports Publications at an address in Little Rock, not Russellville. Cplt. ¶ 20. MS Wholesale does not allege that it believed the invoice had actually been sent by Arkansas Tech. To the contrary, in responding to the invoice MS Wholesale described it as "bogus" and claimed that USP was running a "bogus ad." [2] Cplt. ¶ 20, Exh. 1. MS Wholesale further noted its disbelief by writing:

> This is a national publication that solicits ads in different cities then sends a page listing the subscribers to a particular university. Per Sports Athletic Director at Arkansas Tech.

Exh. 1. As a result, MS Wholesale initially refused to pay the invoice. Cplt. ¶ 21.

Some weeks later, after the football program was published and the advertisement appeared in its pages, MS Wholesale claims that it decided to pay the invoice so as not to jeopardize its 20 year business relationship with Arkansas Tech. Cplt. ¶ 24.

MS Wholesale never purchased another advertisement through USP. Nevertheless, the Complaint does allege that in August 2007, USP contacted MS Wholesale about purchasing an advertisement in the 2007 Arkansas Tech program. Cplt. ¶ 27. MS Wholesale alleges that it declined to purchase an advertisement but asked for additional information about USP's

---

[2] A copy of the invoice is attached to this Brief as Exhibit 1. Because the invoice is specifically identified in the Complaint and is embraced by the pleadings and the exhibits identified by MS Wholesale, it is properly considered on a motion to dismiss. *See Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) ("[I]n considering a motion to dismiss, the district court may sometimes consider materials outside the pleadings, such as materials that are necessarily embraced by the pleadings and exhibits attached to the complaint.") In fact, MS Wholesale has attached what it identifies as a copy of the invoice as Exhibit A to the Complaint. An examination of that document indicates however, that plaintiff has inadvertently attached the second invoice it received. As alleged in paragraph 24 of the Complaint, MS Wholesale paid its second invoice, which is reflected in the notations on Exhibit A.

relationship with the University. Cplt. ¶ 28. Despite its decision not to place an advertisement at that time, MS Wholesale alleges that it nevertheless received an invoice from USP for a sixteenth of a page in the Arkansas Tech program. Cplt. ¶ 29. Once again, MS Wholesale contacted Arkansas Tech and again came to the conclusion that USP's presentation was "false" and "misleading." Cplt. ¶ 31. As a result, MS Wholesale did not purchase an advertisement from USP, nor did MS Wholesale send any money to USP. Cplt. ¶ 31.

## ARGUMENT

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, facts alleged in the complaint are assumed to be true. *Doe v. Norwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997). And while the complaint must be reviewed in the light most favorable to the plaintiff, *McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), a plaintiff must also include "enough facts to state a claim to relief that is plausible on its face."[3] *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

---

[3] The *Twombly* decision abrogated the widely-quoted and widely-understood language from *Conley v. Gibson*, 355 U.S. 41 (1957), that "a complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Twombly*, 127 S. Ct. at 1969. The Court noted that:

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of [undisclosed] facts to support recovery. . . . It seems fair to say that this approach to pleading would dispense with any showing of a reasonably founded hope that a plaintiff would be able to make a case; [Plaintiff's] optimism would be enough.

*Id.* (citations and quotations omitted). The Court concluded that "[t]he phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id; see also, e.g., Sanderson v. Comm'r of Internal Revenue*, 231 Fed. Appx. 534 (8th Cir. 2007) (applying *Twombly*); *Dixon v. Arkansas Surgical Hosp.*, 2007 WL 2711741 * 1 at n.1 (Sept. 14, 2007) (Eisele, J.) (noting abrogation of "no set of facts" language in *Twombly*); *Thompson v. Guntharp*, 2007 WL 2769597 * 2 at n.1 (E.D. Ark. Sept. 24, 2007) (Eisele, J.) (same).

In addition, when a plaintiff alleges claims that sound in fraud, Rule 9(b) of the Federal Rules of Civil Procedure imposes a heightened burden. Specifically, in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Conclusory allegations that a defendant's conduct was fraudulent and deceptive are insufficient to satisfy Rule 9(b). *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995).

## I.

## THE COMPLAINT FAILS TO ALLEGE A VIOLATION OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT

MS Wholesale brings three claims under the Arkansas Deceptive Trade Practices Act ("ADTPA" or "Deceptive Trade Practices Act"). Even assuming that the allegations in the Complaint are true, the acts MS Wholesale describes fail to constitute a violation of the Act. First, MS Wholesale cannot identify a single deceptive statement on the part of USP. The company received exactly what it bargained for – an advertisement in the official Arkansas Tech program sold by a third party. Second, MS Wholesale, by its own admission, did not believe the very statements it now claims were misleading. A claim for deceptive practices cannot survive where a plaintiff does not rely upon those misrepresentations. Finally, MS Wholesale cannot allege compensable damages under the ADTPA.

As its name implies, the Deceptive Trade Practices Act is an anti-fraud provision designed to preclude deceptive sales practices throughout the State. Section 107(a)(1) of the Act prohibits "knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services." Ark. Code Ann. § 4-88-107(a)(1). Likewise, Section 108 makes the "act, use or employment by any

person of any deception fraud or false pretense" unlawful in connection with "the sale or advertisement of any goods, services or charitable solicitation." Ark. Code Ann. § 4-88-108.

A private cause of action exists under the ADTPA, but that action is limited to instances where a person has suffered "actual damage or injury as a result of an offense or violation as defined in this chapter."[4] *Wallis v. Ford Motor Co.*, 362 Ark. 317, 328, 208 S.W.3d 153, 161 (2005) (quoting Ark. Code Ann. § 4-88-113). As Arkansas courts have recognized, claims brought pursuant to the Deceptive Trade Practices Act sound in fraud. The concurrence in *FMC Corp., Inc. v. Helton*, for example, noted that "ADTPA claims . . . will inherently involve substantial questions of fraud or misrepresentation," and hence such claims "sound in fraud or negligence." 360 Ark. 465, 490, 202 S.W.3d 490, 507 (2005). Likewise, United States District Judge William R. Wilson, Jr., observed that a claim under the ADTPA has a "close connection" with fraud. *Boshears v. Certainteed Corp.*, No. 4:05CV01052, 2007 WL 1381652, at *5 (E.D. Ark. May 10, 2007). This is particularly true where, as here, a plaintiff claims active deception and will therefore have to plead and prove that the defendant made a knowing misrepresentation of material fact that was relied upon by the plaintiff. *Id; cf. Moss v. Am. Alternative Ins. Corp.*, 420 F. Supp. 2d 962, 965 (E.D. Ark. 2006) (fraud requires proof of knowing misstatement and reasonable reliance).

### A.   MS Wholesale Fails to Allege a Material Misstatement by USP

---

[4] MS Wholesale also alleges claims under the Telephonic Seller Act (Count 2) and the School Calendar Disclosure Act (Count 3). Neither statute substantively expands the nature of plaintiff's claims. Both statutes serve simply to define additional practices that violate the Deceptive Trade Practices Act. More importantly, neither statute allows for a private right of action. To the contrary, both statues expressly grant the Attorney General all "rights, penalties and authorities" he possesses under the ADTPA, but fails to extend similar authority to private litigants. *See* Ark Code Ann. §§ 4-88-503(b), 4-99-111(b); *see also Wallis v. Ford Motor Co.*, 362 Ark. 317, 327-328, 208 S.W.3d 153, 161 (2005). For this reason alone, plaintiff's second and third causes of action should be dismissed.

While the Complaint is vague as to the exact representations that are alleged to have been fraudulent, MS Wholesale identifies only three substantive statements made during the 2004 sales call, namely (i) that USP was calling on behalf of Arkansas Tech, (ii) that USP was selling advertising in the Arkansas Tech football program, and (iii) that MS Wholesale would be supporting Arkansas Tech by purchasing an advertisement in the program.[5]  Cplt. ¶ 22.  The Complaint fails to identify how any of these statements was deceptive.

As a preliminary matter, it is undisputed that the sole material substantive statement alleged in the Complaint – that USP was selling advertising in the Arkansas Tech football program – was in fact correct.  Cplt. ¶ 23.  Nor is there any dispute that USP was able to place advertisements in the Arkansas Tech program and did so on behalf of MS Wholesale.  Cplt. ¶ 23. Finally, there is also no allegation that USP was not authorized to sell advertising on behalf of Arkansas Tech, nor does MS Wholesale claim that the 2004 sales call was actually made by Arkansas Tech as opposed to a third party.  Cplt. ¶¶ 20, 22.  In fact, the Complaint makes clear that MS Wholesale got exactly what it bargained for: an advertisement in the Arkansas Tech football program purchased through a third party.  Such a transaction is not actionable under the Deceptive Trade Practices Act.  *See, e.g., Wallis*, 362 Ark. at 324, 208 S.W.3d at 159 (dismissing

---

[5] In stating its cause of action for the purported class, MS Wholesale does alleges a series of "misrepresentations" by USP about its relationships with various unnamed schools.  Those alleged misrepresentations include the fact that payment would "be remitted to a particular school," that USP was "affiliated" with a particular school, that a particular school "approved of the advertising methods and fees charged," and that the advertising packages "were endorsed or ratified by a particular school."  Cplt. ¶ 44.  Suffice it to say, there are no allegations that USP actually made these representations in the 2004 sales call to MS Wholesale.

MS Wholesale also appears to cite its 2007 conversations with USP as a basis for its ADTPA claims.  *See* Cplt. ¶¶ 27-31, 42.  MS Wholesale, however, did not purchase an advertisement after those conversations.  Cplt. ¶ 31.  The statements in those sales calls cannot support an ADTPA claim because MS Wholesale could not have suffered any damages without making a purchase (*see* Section I.C, *infra*), and because MS Wholesale could not have relied upon those statements in entering into a transaction.  (*See* Section I.B., *infra*)

ADTPA action where there was "no allegation in the complaint that the Ford Explorer has not, to date, been exactly what Wallis bargained for . . . .").

The only remaining allegation relating to the 2004 transaction is MS Wholesale's contention, "upon information and belief" that its "payment was not turned over to Arkansas Tech . . . but was fraudulently retained by USP." Cplt. ¶ 25. Nowhere in the Complaint, however, does MS Wholesale allege that it was promised that its payment would be "turned over to Arkansas Tech." Moreover, pleading such allegations upon "information and belief" is insufficient to satisfy the requirements of Rule 9(b). *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) ("Where allegations of fraud are ... based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief."); *see also Richter v. Corporate Fin. Assoc.*, 2007 WL 1164649, at *2 (S.D. Ind. Apr. 19, 2007) ("Rule 9(b)'s particularity requirement is not satisfied by allegations of fraud based on 'information and belief,' unless the facts are peculiarly within the adversary's knowledge."); *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) ("The general rule is that allegations of fraud cannot be based upon information and belief.") Absent any detail on the basis for its information and belief, MS Wholesale's Deceptive Trade Practices Act must be dismissed.

### B.   MS Wholesale's Deceptive Practices Act Claims Fails Because the Company Did Not Rely on Any Representation by USP

Even if the alleged statements attributed to USP were somehow deceptive, MS Wholesale would not be able to recover under the ADTPA for the simple reason that it did not reasonably rely on the purported misstatement. After both the 2004 and the 2007 sales calls, MS Wholesale

contacted the Athletic Department at Arkansas Tech and determined that (in MS Wholesale's opinion) USP's statements were not reliable. *See* Cplt. ¶ 31, Exh. 1.

A plaintiff must prove that it justifiably relied on the defendant's allegedly deceptive conduct. *E.g., Boshears v. Certainteed Corp.*, No. 4:05CV01052, 2007 WL 1381652, at *5 (E.D. Ark. May 10, 2007); *Asbury Auto. Group v. Palasack*, 366 Ark. 601, __S.W.3d__, 2006 WL 1702650 at *6 (June 22, 2006); *Jim Ray, Inc. v. Williams*, __ Ark. App. __, __S.W.3d__, 2007 WL 1831790 (June 27, 2007). Justifiable reliance requires that the plaintiff both "actually relied on the misrepresentations, and that this reliance was reasonable." *McAnally v. Gildersleeve*, 16 F.3d 1493, 1497 (8th Cir. 1994). Thus, when a plaintiff "does not in fact rely on the misrepresentation, the fact that he takes some action that would be consistent with his reliance on it . . . does not impose any liability upon the maker." *Moss*, 420 F. Supp. 2d at 965 (citation omitted). Similarly, when a plaintiff discovers the alleged misrepresentation and protects his interests rather than acting in reliance on it, the misrepresentation is not actionable. *Id.*

In *Moss v. American Alternative Insurance Corp.*, for example, the plaintiffs accused the defendant of making misrepresentations to deceive the plaintiffs into signing away their rights to sue in court. 420 F. Supp. 2d at 966. The complaint alleged that after receiving legal advice, the plaintiffs promptly withdrew their signatures without forfeiting their rights. *Id.* The Eastern District of Arkansas held, "[T]he complaint, itself, shows that the plaintiffs discovered the alleged attempted fraud *before* acting in reliance upon it. Hence, the complaint shows on its face that the plaintiffs cannot establish the element of reliance." *Id.* (emphasis added).

Here, the invoice MS Wholesale sent back to USP on September 30, 2004, established that the Company put no stock in USP's statements and representations. Instead, MS Wholesale described the invoice as "bogus" and "NOT" part of the official Arkansas Tech football program. Exh. 1. Calling USP's solicitation a "bogus ad," MS Wholesale explained that it had spoken with the Arkansas Tech athletic director and understood USP to be "a national publication that solicits ads in different cities then sends a page listing the subscribers to a particular university." *Id.* As alleged in the Complaint, MS Wholesale was not persuaded to purchase an advertisement either after it received the invoice or after it spoke with USP representatives on the phone. Cplt. ¶¶ 21, 22. MS Wholesale only agreed to pay for the advertisement after it appeared in the Arkansas Tech program, two weeks after MS Wholesale called the USP invoice "bogus." Cplt. ¶ 24, Exh. A.

Similarly, the Complaint establishes that MS Wholesale did not rely on USP's representations when it received another invoice three years later, on August 7, 2007. Cplt. ¶ 29. As alleged in the Complaint, MS Wholesale was not persuaded to pay USP after the initial sales call, or after receiving the invoice. Cplt. ¶¶ 28, 31. Once again, MS Wholesale contacted Arkansas Tech and came to the conclusion that USP's statements had been "false" and "misleading." Cplt. ¶ 31. Here "the complaint, itself, shows that plaintiffs discovered the alleged attempted fraud before acting in reliance on it." *Moss*, 420 F. Supp. 2d at 966; *see also MFA Mut. Ins. Co. v. Keller*, 274 Ark. 281, 285, 623 S.W.2d 841, 843 (1981) ("[T]here is absolutely no evidence that appellees relied on appellant's misrepresentations. In fact, they knew the statements were false. . . . This is a lack of causal relation in its simplest form."); *Mass. Laborers' Health & Welfare Fund v. Phillip Morris, Inc.*, 62 F. Supp. 2d 236, 243 (D. Mass.

1999) (no deceptive trade practices act liability where "the complaint offers no basis for concluding that it was *reasonable* for the plaintiff to rely on defendants' information as opposed to the contradictory information from other sources.") (emphasis original).

### C.   MS Wholesale Did Not Suffer A Cognizable Injury Under the Arkansas Deceptive Trade Practices Act

The Complaint also fails to allege an injury sufficient to support a claim under the Deceptive Trade Practices Act.  As the language of the ADTPA makes clear, a private cause of action only exists where the plaintiff suffered "actual damage or injury as a result of an offense or violation." *See* Ark. Code Ann. § 4-88-113.  According to the Arkansas Supreme Court, this means that a mere diminution in value is insufficient to state a valid claim for deceptive trade practices. *Wallis v. Ford Motor Co.*, 362 Ark. 317, 325, 208 S.W.3d 153, 159 (2005).  In *Wallis*, the plaintiff's class action suit alleging a dangerous design defect in the Ford Explorer which caused the car to roll over was dismissed for failure to state a claim because the plaintiff did not allege any personal injury or property damage. *Id.* at 318-19, 208 S.W.3d at 154-55.  In affirming the dismissal, the Arkansas Supreme Court stated that there is no "cognizable cause of action under ADTPA where the only injury complained of is a diminution in value of the vehicle." *Id.* at 328, 208 S.W.3d at 162.

With respect to the 2007 sales call from USP, the Complaint plainly fails to allege any damage whatsoever.  As MS Wholesale concedes, it "did not pay the unsolicited invoice." Cplt. ¶ 31.  Nor does MS Wholesale allege compensable damages from its 2004 purchase.  MS Wholesale freely admits that it paid the asking price for the advertisement that it received in the Arkansas Tech program after the advertisement was published and MS Wholesale received the benefits of its publicity. *See* Cplt. ¶¶ 23-24.  MS Wholesale's only complaint is that it paid more

- 12 -

than what it could have paid had it purchased the advertising directly from Arkansas Tech – in other words, that the value of its advertising dollar, when spent with USP, was less than it would have been if it had spent it with Arkansas Tech directly. This is nothing more than diminution in value of the product received, which the Arkansas Supreme Court has held is not a cognizable injury under the ADTPA.

Further, MS Wholesale, under its own allegations, could not have suffered injury. MS Wholesale alleges that in August 2007 USP stated that it "puts the football program together for Arkansas Tech." *See* Cplt. ¶¶ 27-28. However, MS Wholesale never made a payment to USP after 2004. *See* Cplt. ¶¶ 1-80. Even assuming this allegation is true, MS Wholesale did not act on the representation and certainly did not incur any damages because of the statement, much less a cognizable injury under the ADTPA as articulated in *Wallis*.

## II.

### MS WHOLESALE HAS NOT ADEQUATELY ALLEGED A QUASI-CONTRACTUAL CLAIM

MS Wholesale also alleges two quasi-contractual claims based on the "implication" that USP would use the proceeds of its advertisement sales to "support" Arkansas Tech. Cplt. ¶ 70. Specifically, MS Wholesale contends (i) that USP breached an implicit contract to support Arkansas Tech, and (ii) and that in the alternative, USP was unjustly enriched by retaining the money MS Wholesale paid for its advertisement.

At the outset, it should be noted that a claim for either implied contract or unjust enrichment is prohibited under Arkansas law when there is a valid, legal and binding contract. *Hall Contracting Corp. v. Entergy Services, Inc.*, 309 F.3d 468, 475 (8th Cir. 2002). A valid contract requires offer and assent; USP sent MS Wholesale its invoice offering advertising space

- 13 -

which MS Wholesale accepted by paying the invoice without disputing any conditions. *See, e.g., Alltel Corp. v. Sumner*, 360 Ark. 573, 203 S.W.3d 77 (2005).  MS Wholesale's implied contract and unjust enrichment claims are precluded because a contract governed the 2004 transaction between USP and MS Wholesale, as evidenced by the invoice USP sent to MS Wholesale. *See, e.g., Crosby v. Paul Hardeman, Inc.*, 414 F.2d 1, 4-5 (8th Cir. 1969) (under Arkansas law a claim for implied contract did not apply to a period covered by "a written agreement evidenced by an invoice stating the terms of the rental."); *cf. Sky Acres Aviation Servs., Inc. v. Styles Aviation, Inc.*, 620 N.Y.S.2d 442, 442-443 (2d Dep't 1994) (invoice represented final agreement between parties); *Berry v. Ken M. Spooner Farms, Inc.*, No. C05-5538, 2006 WL 1009299, *2 (W.D. Wash. Apr. 13, 2006) (consistent rule is that the exchange of invoices between merchants forms a written contract with enforceable terms).  USP offered to publish an advertisement in the Arkansas Tech football program, and MS Wholesale accepted by paying the invoice price, fulfilling the transaction, waiving any dispute as to the invoice's terms.  MS Wholesale cannot later create additional promises not originally included.

Even if MS Wholesale's quasi-contractual claims were not precluded by the written invoice, its allegations fail to support a cause of action for either implied contract or unjust enrichment.  Generally, an indispensable element of a contract, expressed or implied in fact, is a promise. *Jackson County Grain Drying Coop. v. Newport Wholesale Elec., Inc.*, 9 Ark. App. 41, 652 S.W.2d 638 (1983).  Here, MS Wholesale fails to allege any promise made by USP to specifically remit money to Arkansas Tech.  Cplt. ¶¶ 20, 22, 24.  Nor was there any promise on the part of USP that it would "support" Arkansas Tech.  Even assuming that such a promise had been made, MS Wholesale is not the beneficiary of the promise, meaning that it is incapable of

bringing a claim for enforcement. *See Estes v. Walters*, 269 Ark. 891, 601 S.W.2d 252 (Ark. App. 1980) (only claimants with personal stakes and concrete injuries have standing to sue). Rather, any claim for failure to pass along money to Arkansas Tech would inure to the University. In short, any alleged failure of support or non-payment would be a matter between USP and Arkansas Tech – MS Wholesale has no standing to bring such a claim. *See St. Paul Mercury Ins. Co. v. Circuit Court of Craighead County, W. Div.*, 348 Ark. 197, 206, 73 S.W.3d 584, 589 (2002) (only real parties, those who can discharge the claim, have standing to bring claim).

Nor does the Complaint adequately allege unjust enrichment. Courts will find unjust enrichment when a party receives something of value to which he was not entitled, which he must return. Unjust enrichment is premised upon the theory that there was an implied promise to pay. *Coleman's Serv. Ctr., Inc. v. Fed. Deposit Ins. Corp.*, 55 Ark. App. 275, 299, 935 S.W.2d 289, 292-93 (1996). Such a promise will be implied only where "in equity and good conscience the duty to make such promise exists." *Patton v. Brown-Moore Lumber Co.*, 173 Ark. 128, 134, 292 S.W. 383, 386 (Ark. 1927). Unjust enrichment also requires an element of injustice; parties who are blameless cannot be held to be unjustly enriched merely by exercising a legal or contractual right. *Guaranty Nat'l Ins. Co. v. Denver Roller, Inc.*, 313 Ark. 128, 138, 854 S.W.2d 312, 317 (1993).

Here there is no dispute that USP did exactly what it was paid to do, placing an advertisement in the official Arkansas Tech football program. USP was entitled to keep a portion of the amount MS Wholesale paid for its advertisement because it did not promise MS Wholesale that it would remit the purchase price of the ads that it sold to Arkansas Tech.

Because USP did not make this promise, it cannot be liable for breaching an implied contract.  A promise cannot be implied in this case because USP did not profit unconscionably from its dealing with MS Wholesale.

Nor was any injustice done to MS Wholesale:  the sales agreement to resell advertising space between USP and Arkansas Tech does not involve MS Wholesale or any other advertisement purchaser; any claims to payment, whether in part or in full, are Arkansas Tech's alone, not MS Wholesale's.  The subject of MS Wholesale's contract was advertising space, and it received the benefit of its bargain:  an advertisement in the ATU Football Program.  MS Wholesale has not suffered injustice because it was not injured with respect to non-payment of advertising fees.  Arkansas Tech is the sole proper party who could bring claims against USP for non-payment, because it is the only entity which could possibly claim such a financial injury.

Because USP made no promises which it could breach, did not unjustly benefit from its advertising sales and because MS Wholesale was not injured, MS Wholesale's claims for quasi-contractual relief must fail.

## III.
## CLAIMS LIKE THOSE BROUGHT BY MS WHOLESALE ARE INAPPROPRIATE FOR CLASS ACTION TREATMENT

Even if the Court concludes that MS Wholesale has stated a claim based on its own advertising purchase there is no basis for allowing the case to move forward as a class action. While a decision on the suitability of a class typically comes after a plaintiff files a motion for class certification, a court can "strike class action allegations prior to discovery in those rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 205 n. 3 (D. N.J. 2003); *see*

*also* Herbert Newberg & Alba Conte, 2 Newberg on Class Actions, § 6:20 (3d Ed. 1992) (noting that "plaintiff's allegations must indicate sufficiently that the adjudication of his or her claim will necessarily involve one or more common questions concerning persons similarly situated" and that class action pleadings "should not be merely conclusory").  Here it is clear from the face of the Complaint that the consumer fraud claims alleged by MS Wholesale, are ill suited for class treatment.

Federal Rule of Civil Procedure 23(a) lists four criteria for the maintenance of a class:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition to the numerosity, commonality, typicality, and adequacy of representation requirements, a proposed class must fall in to one of three categories provided in Rule 23(b).

Here, MS Wholesale purports to bring a Rule 23(b)(3) action.  Cplt. ¶ 41.  Class certification under Rule 23(b)(3) can be maintained if "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and a "class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Blades v. Monsanto Co.*, 400 F.3d 562, 569 (8th Cir. 2005).  The predominance portion of this rule parallels Rule 23(a)(2) in that both rules require that common questions exist.  However, even if Rule 23(a)(2)'s commonality requirement is satisfied, the predominance criterion under Rule 23(b)(3) is far more demanding. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997).

Claims brought under a variety of state deceptive trade practice acts are particularly ill

suited for class treatment.  Individual questions of reliance and causation will overwhelm any

common issues.  In fact, both state and federal courts in Arkansas have recently rejected class

actions claiming violations of the ADTPA.  In *In re Prempro Products Liability Litigation*, 230

F.R.D. 555 (E.D. Ark. 2005), Judge Wilson rejected a proposed class action alleging violations

of deceptive trade practice acts and unjust enrichment laws in thirty-two different jurisdictions.

In that case, plaintiffs proposed a class based on claims that the drug manufacturer Wyeth had

violated consumer protection laws through false or misleading advertisements regarding certain

treatments for post-menopausal women.

After a comprehensive review of the law in those jurisdictions, Judge Wilson found that

statutes were insufficiently similar to support a coherent class action:

> In fact, a review of the unjust enrichment and consumer fraud/unfair competition
> claims reveals that these laws *cannot reasonably be grouped* in a comprehensive
> manner that does not seriously impinge on the integrity of the law of each state.

*Id.* at 563 (emphasis added).  Among other things, the "actual definition of 'unjust enrichment'

varies from state to state."  *Id.*  The differences in the state deceptive trade practices acts were

equally profound, with Judge Wilson noting that the consumer fraud and unfair competition laws

of the states "differ with regard to the defendant's state of mind, type of prohibited conduct,

proof of injury-in-fact, available remedies, and reliance, just to name a few."  *Id.* at 564.  In

short, there was no way common questions of law would predominate for the class.  *Id.* at 566

("[T]he state-by-state variations in law trump the common issues of law or fact, and preclude a

finding that common issues predominate.").

In addition, given the nature of claims under the various deceptive trade practice acts,

Judge Wilson found that common questions of fact did not predominate.  "For example, the

consumer fraud claim 'require[s] individualized proof concerning reliance and causation.'" *Id.* at 567 (quoting *In re Rezulin Products Liab. Litig.*, 210 F.R.D. 61, 66-67 (S.D.N.Y. 2002)). Among other individualized questions of fact, each plaintiff would have to establish whether they saw questionable advertisements, whether a given advertisement was fraudulent, whether the plaintiff had relied on the advertisement and whether they suffered actual damages from that reliance. *Prempro*, 230 F.R.D. at 567.

Even earlier, an Arkansas Circuit Court had rejected a proposed class alleging violation of consumer protection statutes based on misleading sales presentations for mobile homes. *Frelin v. Oakwood Homes Corp.*, No. Civ. 2001-53-3, 2002 WL 31863487 (Ark. Cir. Nov. 25, 2002). In *Frelin*, Judge Phillips concluded that the mere fact that the proposed class would have the same theory of recovery, arising out of a purported common scheme, was not sufficient to support the certification of a class. *Id.* at *8 ("Recent authorities have explained that an allegation of an overall 'scheme' to defraud cannot form 'an overarching common issue' sufficient to certify a class") (citing *Andrews v. AT&T*, 95 F.3d 1014, 1023 (11th Cir. 1996)). Given the fact that the sales in question arose out of face-to-face meetings, the court found that the plaintiffs, "would have to make a highly individualized demonstration as to what each was told orally by Oakwood sales representatives." *Frelin*, 2002 WL 31863487 at *7. Such a showing was not capable of common proof, and the question of whether the oral statements of individual sales representative "violated a particular state's licensing laws, plainly implicate an individualized evidentiary demonstration by each putative member of the [class]." *Id.* at *8. Given the individualized nature of the proof, the court concluded that "threshold commonality [had] not been demonstrated" and that class certification "would be improper in these

circumstances." *Id.*

The allegations in this action are even less amenable to class treatment than those in *Prempro* and *Frelin.* Here MS Wholsale proposes to certify a class covering all fifty states and the District of Columbia – nineteen more jurisdictions than the court found to be unmanageable in *Prempro.*   Cplt. ¶ 46.  As is made clear from the Complaint, each plaintiff's action will entail a host of individualized questions, including: (i) USP's relationship and authorization to sell advertisements for a given university; (ii) the nature of each individual sales call; (iii) the price charged for the given advertisement; and (iv) whether payment was made to the individual university.   Cplt. ¶ 44.  Plainly these questions are not susceptible to class-wide proof.  *See Prempro,* 230 F.R.D. at 567; *Frelin,* 2002 WL 31863487 at *8.  Given the paucity of plaintiff's class allegations and the fact that the commonality and predominance problems are already apparent, it is entirely appropriate to dismiss the class claims at this stage.  Indeed, given the breadth of the proposed class – all individuals who "purchased and/or paid for advertising from University Sports Publications" – and the sweeping discovery MS Wholesale plans to conduct, allowing the class claims to proceed would turn this relatively small, manageable commercial action into an unwieldy nationwide mess.  Early assessment of a litigant's claims is designed to avoid precisely this sort of *in terrorum* action.[6]  That is particularly the case in an action like this

---

[6] In *Twombly,* the Supreme Court was clear-eyed about the breathtaking discovery costs required to determine if a class exists much less substantively defend the action.  Citing *Dura Pharmaceuticals v. Broudo,* 544 U.S. 336 (2005), the Court noted the danger in allowing "a plaintiff with 'a largely groundless claim'" to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly,* 127 S. Ct. at 1966.  The Court dealt in frank, realistic terms with the idea that groundless claims could be weeded efficiently in discovery or at summary judgment:

where, as Judge Wilson succinctly put it, "No matter how you cut it, cube it, or slice it, Plaintiffs cannot overcome the problems with individual issues of law and fact, which eclipse any possible common questions or cohesion among their claims." *Prempro*, 230 F.R.D. at 573.

---

It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through "careful case management," given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side. *See, e.g.,* Easterbrook, Discovery as Abuse, 69 B.U.L. Rev. 635, 638 (1989) ("Judges can do little about impositional discovery when parties control the legal claims to be presented and conduct the discovery themselves") . . . . [T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching those proceedings.

*Id.* at 1967.

## CONCLUSION

For these reasons, USP respectfully requests that the Court dismiss the complaint with prejudice.

Respectfully submitted,

H. WILLIAM ALLEN (ABN 69001)
CHRISTIAN HARRIS (ABN 2002207)
KEVIN M. LEMLEY (ABN 2005034)
ALLEN LAW FIRM
A Professional Corporation
212 Center Street, 9th Floor
Little Rock, AR 72201
(501) 374-7100

By: /s/ H. William Allen
    H. William Allen

By: /s/ Christian Harris
    Christian Harris

By: /s/ Kevin M. Lemley
    Kevin M. Lemley

Attorneys for Defendant

## CERTIFICATE OF SERVICE

      I hereby certify that, on this 2nd day of October, 2007, I electronically filed the foregoing Defendant's Brief in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF System, which will send immediate notification of such filing to the following other counsel:

      Alex G. Streett
      alex@streettlaw.com
      James A. Street
      james@streettlaw.com
      Streett Law Firm, P.A.
      107 West Main
      Russellville, AR 72811

      William N. Riley
      wriley@price-law.com
      Joseph N. Williams
      jwilliams@price-law.com
      301 Massachusetts Avenue
      Indianapolis, Indiana 46204

                        /s/ H. William Allen
                        H. William Allen

- 23 -