**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN   DIVISION

|  |  |  |
|---|---|---|
| M.S. WHOLESALE PLUMBING, INC., individually and on behalf of a class of all others similarly situated, | * * * * * | |
| Plaintiff | * * | NO: 4:07CV00730   SWW |
| VS. | * * | |
| UNIVERSITY SPORTS PUBLICATIONS CO., INC. | * * * | |
| Defendant | * * * | |

**ORDER**

M.S. Wholesale Plumbing, Inc. ("M.S.") brings this putative class action pursuant to the Court's diversity jurisdiction, charging University Sports Publications Co., Inc. ("USP") with illegal marketing and selling of advertising space.   Before the Court is USP's motion to dismiss (docket entry #15), M.S.'s response (docket entry #18), and USP's reply (docket entry #19). Also before the Court is USP's motion for a protective order (docket entry #24), M.S.'s motion for sanctions in response to USP's motion for a protective order (docket entry #28), and USP's response thereto (docket entry #30).   After careful consideration, and for the reasons that follow, USP's motion to dismiss will be denied to the extent that USP seeks dismissal of M.S.'s individual claims for relief.  However, to the extent that USP seeks dismissal of class allegations, the motion to dismiss will be held in abeyance pending a response from M.S.  USP's motion for a protective order will be granted as provided in this order, and M.S.'s motion for sanctions will

be denied without prejudice.

## I. Background

According to complaint allegations, USP purchases advertising space in various college publications, such as athletic programs and yearbooks, and resells the space to businesses at inflated prices. M.S. claims that USP focuses its marketing efforts on businesses that depend on local colleges and universities for income and are reluctant to decline an opportunity to support such schools. According to M.S., USP secures money for advertisement space from the targeted businesses by misrepresenting that it is acting on behalf of local schools.

M.S. makes the following allegations regarding its specific dealings with USP. M.S. is a plumbing supply company in Russellville, Arkansas. Arkansas Tech University ("ATU"), also located in Russellville, is one of M.S.'s best customers. Prior to the 2004-2005 ATU football season, M.S. received an "unsolicited" invoice from USP. The invoice bears a banner letterhead that reads as follows:

ARKANSAS TECH UNIVERSITY
OFFICIAL FOOTBALL PROGRAM

Below the letterhead, in considerably smaller print, appears the following:

> *Prepared By*:  University Sports Publications,
>                  1818 North Taylor Street
>                  Dept. 196
>                  Little Rock, AR 72207
>                  (501) 569-9244

The body of the invoice reads as follows:

> Thank you again for your participation in the 2004 Arkansas Tech University Football Program. If you have not already done so, please remit payment at your earliest convenience. We look forward to working with you in the future.
>
> SALE AMOUNT: $495.00, NET SIZE: Sixteenth Page  AMOUNT DUE: $495.00, Net

Docket entry #1, Ex. A.

M.S. returned the invoice unpaid.  Subsequently, USP agents contacted M.S. by phone. The agents stated that they were calling on behalf of ATU, and they asked M.S. to support ATU by purchasing an advertisement in the official ATU football program.  M.S. declined to purchase an advertisement.  Nonetheless, the 2004-2005 ATU football program included an advertisement for M.S.

Desiring to maintain a good business relationship with ATU, and believing that USP was selling advertising space on behalf of ATU, M.S. paid for the advertisement.  M.S. alleges that USP retained the payment, which was never used for the benefit of ATU.

Prior to the 2007 football season, USP again contacted M.S. in an attempt to sell advertisement space in the ATU football program.  When M.S. questioned USP about its relationship with ATU, a USP agent stated that USP "put the football program together" for ATU.  M.S. requested information regarding USP's pricing, services, and affiliations, but specifically declined to purchase an advertisement.

Again, M.S. received an invoice for a sixteenth page advertisement in the ATU football program.  This time, USP charged M.S. $595.  The invoice, styled in a letter format, reads:

> Thank you for your participation in the 2007 Arkansas Tech Football Program. While providing a worthwhile service by supporting Arkansas Tech University, you are also gaining valuable exposure for your company as your ad will be seen by thousands of students, alumni, faculty members and school administrators.  Your ad will be placed in the section entitled "Contractors Building for the Future of Arkansas Tech University.  Again, thank you for your participation.

Docket entry #1, Ex. B.

M.S. did not pay the invoice.  M.S. contacted ATU and learned that USP's representations were false: USP did not "put together" a football program for ATU and did not act on behalf of ATU.  Furthermore, ATU informed M.S. that a full page advertisement could be

purchased directly from the University for $350.

M.S. charges USP with violations of the Arkansas Deceptive Trade Practices Act ("ADTPA"), the Arkansas School Calendar Act, and the Arkansas Telephonic Sellers Act. Additionally, M.S. seeks relief for breach of implied contract and unjust enrichment.

## II.  USP's Motion to Dismiss

In deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), all facts alleged in the complaint are assumed to be true.  *See Doe v. Northwest Bank Minn., N.A.*, 107 F.3d 1297, 1303-04 (8th Cir. 1997).  The complaint must be reviewed in the light most favorable to the plaintiff, *see McMorrow v. Little*, 109 F.3d 432, 434 (8th Cir. 1997), and should not be dismissed unless it is clear beyond doubt that the plaintiff can prove no set of facts thereunder which would entitle him or her to relief.  *See Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996).  The Court may grant a motion to dismiss on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

USP asserts that M.S. fails to state a cognizable claim under any of the asserted grounds for relief and that it is clear that M.S.'s class action allegations should be stricken.  The Court will address each argument separately.

### ADTPA

The ADTPA prohibits knowingly making false representations as to the sponsorship of goods or services, *see* Ark. Code Ann. § 4-88-107(a)(1), as well as engaging in "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade."  Ark. Code Ann. § 4-88-107(a)(10).  The ADTPA provides a private cause of action for any person who suffers actual damage or injury as a result of practices declared to be unlawful under the Act. *See* Ark. Code Ann. §  4-88-113(f).

M.S. alleges that it paid USP for the advertisement that appeared in the 2004-2005 ATU football program, even though it never agreed to purchase the advertisement prior to its publication. According to M.S., it paid for the advertisement because it wanted to maintain a good business relationship with ATU, and it believed USP's claim that it was acting on behalf of ATU.

Despite these allegations, USP asserts that M.S., by its own admission, did not rely on USP's alleged representations that it was acting on behalf of ATU.[1] USP submits a document, which it claims is a copy of the invoice that M.S. returned unpaid in 2004. The invoice submitted by USP is not the same invoice attached to the complaint, which M.S. has identified as a true and correct copy of the 2004 invoice. *Compare* docket entry #1, Ex. A, *with* docket entry #16, Ex. #1. The invoice presented by USP contains the following handwritten note:[2] "Bogus ad. This is a national publication that solicits ads in different cities then sends a page listing the subscribers to a particular University. Per Sports Athletic Director @ ATU." Docket entry #16, Ex. #1.

USP states that the handwritten note establishes that M.S. did not rely on USP's alleged representation that it was selling ad space on behalf of ATU. However, M.S. alleges in the complaint that after it returned the invoice unpaid, it received calls from USP agents who stated they were acting on behalf of ATU. Accordingly, even assuming that the invoice submitted by USP can be considered at this juncture, it does not contradict M.S.'s allegation that it paid for the

---

[1] USP also argues that M.S. fails to "identify a single deceptive statement on the part of USP." However, M.S. plainly alleges that USP falsely represented that it was selling advertising space on behalf of ATU.

[2] Even without the handwritten note, the invoice presented in support of USP's motion is not the same invoice attached to the complaint. *Compare* docket entry #1, Ex. A, *with* docket entry #16, Ex. #1.

advertisement because it believed that "USP had actually been calling M.S. . . . on behalf of Arkansas Tech and that . . . payment of the invoice would therefore be used to support the Arkansas Tech football and athletic programs." Docket entry #1, ¶ 24.

USP contends that M.S. has failed to allege damages because M.S. received "exactly what it bargained for" and the "only complaint is that it paid more than what it could have paid had it purchased the advertising directly from Arkansas Tech." Docket entry #16, at 12-13. According to USP, M.S.'s alleged damages amount to nothing more than diminution in the value of the product received, which is not a cognizable injury under the ADTPA. USP cites *Wallis v. Ford Motor Co.*, 362 Ark. 317, 208 S.W.3d 153 (2005), in support of this argument.

In *Wallis*, the plaintiff sued under the ADTPA alleging that the manufacturer of an SUV concealed a design defect, which led him to purchase the vehicle at a price in excess of its actual value. The plaintiff did not allege personal injury or property damage, nor did he claim that the SUV malfunctioned in any way. The Supreme Court of Arkansas held that "actual damage or injury [under the ADTPA] is sustained when the product has actually malfunctioned or the defect has manifested itself. Where the only injury is the diminution in value of the product, a private cause of action is not cognizable under the ADTPA." *Wallis*, 363 Ark. at 328, 208 S.W.3d at 161.

In *Walllis*, the plaintiff could not prove that he did not receive the vehicle he bargained for because the vehicle had not malfunctioned. Unlike the plaintiff in *Wallis*, who suffered a purely pecuniary loss, M.S. is not alleging that it purchased a product with less economic value than represented by the seller. Instead, M.S. claims that it paid for a product that was not at all what USP represented–that is, an advertisement sold on behalf of ATU. The Court finds that M.S. has alleged sufficient facts to satisfy the ADTPA's actual damage requirement.

**Arkansas Telephonic Sellers and School Calendar Acts**

M.S. charges that USP violated disclosure requirements set forth in two consumer-related Arkansas statutes: the School Calender Act, codified at Ark. Code Ann. §§ 4-88-501 through 503, and the Telephonic Sellers Act, codified at Arkansas Code Ann. §§ 4-99-101 through 112. Both statutes provide that a violation of statute provisions constitute a *per se* violation of the ADTPA. *See* Ark. Code. Ann. §§ 4-88-503(a), 4-99-111(b). Additionally, both Acts provide that all remedies, penalties, and authority granted to the Arkansas Attorney General under the enforcement provision of the ADTPA shall be available to the Attorney General for enforcement purposes under the separate statutes. *See* Ark. Code Ann. §§ 4-88-503(b), 4-99-111(b).

USP argues that neither the School Calendar Act nor the Telephonic Sellers Act provide a private cause of action and that the Arkansas Attorney General alone has authority to enforce the statutes.

In 1999, the Arkansas legislature extended a private cause of action under the ADTPA to "any person" who suffers actual damage or injury as a result of a violation of the Act. *See* Ark. Code Ann. § 4-88-113(f). The ADTPA prohibits a variety of listed practices and includes a catchall provision prohibiting "any other unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. 4-88-107. Nothing in the ADTPA indicates that the private right of action extended to consumers excludes violations of the numerous Arkansas statutes that make a violation of those statutes a *per se* violation of the ADTPA.[3]

---

[3]Among the statutes providing *per se* violations of the ADTPA are statutes regulating charitable disclosures, *see* Ark. Code Ann. § 4-103-204(a)(1); credit card debt transfers, *see* Ark. Code Ann. § 4-107-203(a)(1); price gouging, *see* Ark. Code Ann. § 4-88-304(a)(1); caller ID blocking, *see* Ark. Code Ann. § 4-99-303(a); and home solicitation sales, *see* Ark. Code Ann. § 4-89-106(a)(1).

Although the Telephonic Sellers Act and the School Calendar Act do not provide a private cause of action for consumers, a violation of either statute constitutes a deceptive trade practice under the ADTPA, and any person who suffers actual damage as a result of such a practice has a cause of action under the ADTPA. The Court finds that M.S.'s claims regarding violations of the Telephonic Sellers Act and the School Calendar Act are actionable under the ADTPA.

**Breach of Implied Contract**

M.S. seeks relief under an implied contract theory, alleging that "USP impliedly promised that the consideration provided by M.S. . . . would be used to support a particular school." Docket entry #1, ¶¶ 70-71. USP argues that M.S. fails to state a claim for breach of implied contract because (1) an express contract existed between the parties, which precludes relief under an implied contract or unjust enrichment theory; (2) M.S. does not allege that USP promised to remit money to ATU; and (3) even if USP made such a promise, MS is has no standing to bring a claim for breach.

*Express Contract*. USP asserts that "M.S.'s . . . implied contract and unjust enrichment claims are precluded because [an express contract] governed the 2004 transaction between USP and M.S. . . . as evidenced by the invoice USP sent to M.S." Docket entry #16, at 14. According to USP, its invoice to M.S. amounted to a written offer, which M.S. accepted through payment. But M.S. alleges that it returned the invoice unpaid, and it made payment only after it received telephone solicitations from USP agents who claimed that USP was acting on behalf of ATU and after an advertisement for M.S. appeared in ATU's football program. M.S. further alleges that it

paid USP out of a desire not to jeopardize its business relationship with ATU.  M.S.'s allegations, which the Court must accept as true at this stage in the case, do not support a conclusion that USP's invoice represents an express contract between the parties.

*Promise*.  USP asserts that M.S. fails to allege any promise made by USP to "specifically remit money" to ATU.  Under Arkansas law, a promise is an indispensable element of every contract, but a promise may be inferred.  *See Phillips v. Marist Soc. of Washington Province*, 80 F.3d 274, 276 (8th Cir. 1996)(citing *Downtowner Corp. v. Commonwealth Securities Corp.*, 243 Ark. 122, 124, 419 S.W.2d 126, 128 (1967)).  The terms of a contract implied in fact can be inferred from conduct, and the conduct of the parties is to be evaluated from the point of view of a reasonable person, considering all of the attendant circumstances.  *Id*.(citation omitted).

Here, M.S. alleges that USP represented that it was selling advertising space on behalf of ATU, which implied that payment for advertising space would be remitted to ATU.  M.S. is not required to allege that USP expressly promised to remit payments to ATU, and the Court finds that M.S. has sufficiently alleged an implied promise.

*Standing*.  USP argues that only ATU has standing to sue for breach of the alleged promise to remit money to ATU.  This argument is without merit.  M.S. is suing for beach of an implied contract between USP and M.S.  As a party to the contract, M.S. certainly has standing to sue.

### Class Action Allegations

In the complaint, M.S. describes the putative class as thousands of persons and/or businesses located in the United States who purchased advertising from USP.   The complaint allegations indicate that putative class members will pursue claims under the trade practice and consumer-related statutes and common law existing in each of the fifty states.

Federal Rule of Civil Procedure 23(a) lists four criteria for the maintenance of a class: (1) that the class be so numerous that joinder of all members is impracticable; (2) that common questions of law and fact exist among potential class members; (3) that claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) that representative parties will fairly and adequately protect the interests of the class. In addition to the numerosity, commonality, typicality, and adequacy of representation requirements, a proposed class must fall in to one of three categories in Rule 23(b). M.S., the only named plaintiff, shoulders the burden to show that each requisite for class certification is met in this case.

USP asserts that it is clear from the complaint that M.S. is unable to establish the requirements for class certification under Rule 23(a), particularly the commonality requirement. USP points out that claims brought under a variety of state deceptive trade practices acts are ill suited for class action treatment because differences in state laws and individual questions of reliance and causation will overwhelm any common issues.

M.S. does not respond to the substance of USP's argument and asserts that the issue of class certification is premature. The Court disagrees. Rule 23(c) requires district courts to make a determination as to whether a class action is maintainable "as soon as practicable after the commencement of an action." In some cases, the propriety of certifying a class action can be decided before a motion for certification is filed and even before discovery on the certification issue.[4] "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and

---

[4] "Although in some cases a district court should allow discovery to aid in the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements are satisfied or that discovery is likely to produce substantiation of the class allegations." *Montolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985).

sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification issue." *General Telephone Co. v. Falcon*, 102 S. Ct. 2364, 2372 (1982).

The Court finds that the issues raised by USP regarding class certification merit resolution as soon as possible. Although the Court finds that these questions can be resolved as a matter of law and without discovery, the Court will give M.S. an opportunity to file a more substantive response before deciding whether the class allegations should be stricken.

### III.  USP's Motion for Protective Order and M.S.'s Motion for Sanctions

On December 5, 2007, USP filed a motion for a protective order, asking the Court to stay or limit discovery pending a decision on USP's motion to dismiss. USP argues that limiting discovery to matters relevant to M.S.'s individual claims will obviate the need for time-consuming and burdensome discovery. According to USP, such limited discovery will establish that during the relevant time period, USP was operating pursuant to an agreement with ATU, which authorized USP to sell advertising on behalf of the University. By way of example, USP submits a copy of a document that it claims is a contract giving USP the right to sell advertising space on behalf of ATU. *See* docket entry #25, Ex. J.  USP also submits a copy of a letter that it claims is "a letter to MS . . . from the Sports Information Director at Arkansas Tech explicitly stating that USP was 'selling advertising on [ATU's] behalf in connection with the official Arkansas Tech Football program.'" Docket entry #25, Ex. K.

In response to USP's motion for a protective order, M.S. filed a motion for sanctions asserting USP fraudulently created the aforementioned documents submitted in support of its motion for a protective order. According to M.S., "that USP resorted to attaching these documents speaks volumes with regard to the propriety of its current motion . . . . " Docket entry

#29, at 3.  USP denies M.S.'s charge and seeks an opportunity to conduct limited discovery to prove that the documents are authentic.

Even without considering the documents submitted in support of USP's motion, the Court finds that in the interest of efficient case management, discovery regarding putative class claims should not proceed before a decision on USP's motion to dismiss or strike class allegations.  USP's motion for a protective order will be granted, and discovery may proceed only with respect to M.S.'s individual claims.

As for M.S.'s motion for sanctions, it is impossible to determine on the present record whether the documents submitted by USP are authentic.  Accordingly, the motion for sanctions will be denied without prejudice.  Discovery regarding M.S.'s individual claims will no doubt include an investigation into the authenticity of the documents at issue, and M.S. may elect to resubmit its motion after such discovery takes place.

### IV.  Conclusion

IT IS THEREFORE ORDERED that Defendant's motion to dismiss (docket entry #15) is DENIED to the extent that Defendant seeks dismissal of Plaintiff's individual claims.  To the extent that Defendant seeks dismissal of class allegations, the motion to dismiss is HELD IN ABEYANCE.

IT IS FURTHER ORDERED that Plaintiff has up to and including fifteen days from the entry date of this order in which to file a response to Defendant's motion to dismiss class allegations.

IT IS FURTHER ORDERED that Defendant's motion for a protective order (docket entry #24) is GRANTED to the extent that all discovery regarding class allegations is stayed

pending resolution of Defendant's motion to dismiss class allegations. Discovery may proceed as to Plaintiff's individual claims only.

IT IS FURTHER ORDERED that Defendant's motion for a hearing (docket entry #26) is DENIED AS MOOT.

IT IS FURTHER ORDERED that the Arkansas Attorney General's motion seeking leave to file an amicus brief (docket entry #22) is GRANTED.[5]

IT IS FURTHER ORDERED that Plaintiff's motion for sanctions (docket entry #28) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED THIS 7TH DAY OF JANUARY, 2008.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[5] The Attorney General filed the amicus brief along with his motion. Although the Attorney General takes no stand as to the merits of Plaintiff's claim, he asserts that Plaintiff has has a private right of action to enforce the School Calendar and Telephonic Sellers Acts by way of the ADTPA. *See* docket entry #22, attachment.